666 A.2d 221

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Michael LaCAVA, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 17, 1994.

Decided Sept. 19, 1995.

164

George Henry Newman, Philadelphia, for M. LaCava.

Catherine Marshall, Ronald Eisenberg, Hugh J. Burns, Philadelphia, for Commonwealth.

Robert A. Graci, Harrisburg, for Attorney General's Office.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

This is an automatic direct appeal [1] from the judgments of sentence of death and concurrent and consecutive terms of imprisonment imposed upon appellant, Michael LaCava, by the Philadelphia County Court of Common Pleas, Criminal Division. For the reasons set forth below, we affirm appellant's convictions but vacate the sentence of death and remand the matter back to the trial court for a new sentencing hearing on appellant's murder conviction.

Following a ten day jury trial in 1991 in the Philadelphia County Court of Common Pleas before the Honorable Eugene H. Clarke, Jr., appellant was found guilty of first-degree murder,[2] possession of an instrument of crime,[3] aggravated assault,[4] simple assault,[5] and criminal conspiracy.[6] A death penalty hearing was held on June 28, 1991, and the following day the jury found two mitigating circumstances and one aggravating circumstance. The aggravating circumstance was that appellant killed a police officer acting in the line of duty. After weighing the aggravating and mitigating circumstances, the jury set the penalty at death. On November 5, 1992, post-verdict motions were argued and denied, and the court imposed an aggregate consecutive sentence of 7 years and 3½

---

1. *See* 42 Pa.C.S. §§ 722(4), 9711(h)(1); Pa.R.A.P. 702(b) and 1941.

2. 18 Pa.C.S. § 2502(a).

3. 18 Pa.C.S. § 907.

4. 18 Pa.C.S. § 2702(a)(1).

5. 18 Pa.C.S. § 2701.

6. 18 Pa.C.S. § 903.

months to 18 years and 7 months on the remaining non-capital charges. A timely notice of appeal was filed and on June 15, 1993, this Court permitted trial counsel to withdraw. On November 8, 1993, present counsel was appointed from whom this Court heard oral argument on October 17, 1994 on appellant's direct appeal.

### Sufficiency of the Evidence Supporting the Conviction

In this death penalty case we must first determine whether the evidence was sufficient to sustain the conviction for first-degree murder. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). This determination is made even in cases in which the death sentence is vacated and the case is remanded for resentencing. *See Commonwealth v. Frederick,* 508 Pa. 527, 498 A.2d 1322 (1985). In reviewing a sufficiency of the evidence claim, an appellate court must determine whether the evidence was sufficient to enable the factfinder to find every element of the crimes charged beyond a reasonable doubt, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the verdict winner. *Commonwealth v. Thomas,* 527 Pa. 511, 513–514, 594 A.2d 300, 301 (1991) (citation omitted). To prove murder of the first degree, the Commonwealth must show that a human being was unlawfully killed, that the person accused did the killing, and that the killing was done in an intentional, deliberate and premeditated manner. *Commonwealth v. Mitchell,* 528 Pa. 546, 551, 599 A.2d 624, 626 (1991) (citation omitted). The specific intent to kill needed to support a first-degree murder conviction can be proven by use of a deadly weapon upon a vital part of the victim's body. *Commonwealth v. Rivers,* 537 Pa. 394, 399, 644 A.2d 710, 712 (1994).

Here, the evidence at trial established that appellant and his brother assaulted one Jose Rodriguez with a broken beer bottle to the back of the neck, requiring multiple stitches, and, although never actually hitting Mr. Rodriguez, with four or five shots from a .38 caliber revolver. Later that day, appellant and Rodriguez argued once again in front of Rodri-

guez' home. When Rodriguez' sister, Diane Hernandez, attempted to block appellant's path and prevent him from entering the house, appellant kicked her in the stomach and knocked her to the ground. The police were called and soon arrived. Although they attempted to arrest appellant, he was able to elude them by jumping out of a second story window and fleeing the area. Shortly thereafter, off-duty Police Officer Jack Montijo confronted appellant on the street where appellant had taken temporary refuge from his flight from the police.[7] As Officer Montijo approached appellant and ordered him to hand over his gun and surrender, appellant fired at the officer at close range with a .38 caliber revolver. Officer Montijo returned appellant's fire with a .25 caliber Baretta automatic but was unable to prevent appellant from shooting at him again, this time fatally wounding him in the forehead. Appellant fled the area but was finally arrested the next day hiding in a home in another section of the city. These facts clearly established beyond a reasonable doubt appellant's guilt not only for first-degree murder but also for the other charges as well. Viewed in a light most favorable to the Commonwealth, the verdict winner, the evidence was sufficient to sustain appellant's conviction. *See Commonwealth v. Hamm,* 474 Pa. 487, 491–494, 378 A.2d 1219, 1221–1222 (1977) (evidence that almost three years before the killings, the police seized four weapons (including the eventual murder weapon) from defendant's home and that one of the deceased officers had filed criminal charges against defendant on several occa-

---

7. Appellant had experienced numerous prior scuffles and encounters with Officer Montijo prior to the instant deadly encounter. Officer Montijo had arrested appellant on at least one prior occasion on drug trafficking charges. It was also shown at trial that appellant thought Officer Montijo secretly observed neighborhood drug activities while off duty and reported them to the police. Further, approximately two weeks before the instant murder, appellant had broken the windshield and slashed the tires on Officer Montijo's car for which Officer Montijo asked another officer to help resolve the matter informally. When that officer asked appellant about the damage to Officer Montijo's car, appellant defiantly answered, "Yeah, I did it, so what?" Appellant also complained that Officer Montijo was "bothering" him, that the officer did not belong in the neighborhood, and that he would continue to harass the officer every time he saw him. N.T. 6/19/91, 61–63; 6/20/91, 98–107, 118–120.

sions, prompting defendant to believe that officer was "harassing" him, was sufficient to support first-degree murder conviction for the slaying of two police officers).

### *Severance of Criminal Charges*

Turning to the issues raised by appellant, appellant argues that the trial court erred in denying a defense motion to sever appellant's assault charge from his murder charge. Appellant argues that the trial court's denial of his severance motion impermissibly allowed the Commonwealth to proceed against appellant for the murder of Officer Montijo in the same trial that it prosecuted appellant for his assaults against Jose Rodriguez and Diane Hernandez. Appellant argues that the admission of the facts and circumstances of the earlier assaults was unnecessary for the Commonwealth to prove any issue related to the killing of Officer Montijo. Appellant claims that the admission of evidence relating to these prior bad acts painted him as a person of bad character with a propensity toward violence and that such evidence was so prejudicial he was deprived of a fair trial.

Whether to sever related charges is a matter of discretion for the trial court and may be reversed only upon a showing of a manifest abuse of that discretion or undue prejudice and clear injustice to the defendant. *Commonwealth v. Newman*, 528 Pa. 393, 398, 598 A.2d 275, 277 (1991) (citation omitted). It is proper to try related offenses in a single trial if the facts establishing them would have been admissible on other grounds even if the charges were not consolidated. *Id.* Here, the evidence of the prior assaults would have been admissible to establish appellant's motive in committing the murder and to show the history and natural development of the facts. *See Commonwealth v. Carter*, 537 Pa. 233, 256, 643 A.2d 61, 72 (1994) (evidence of a distinct crime is admissible to establish an accused's motive in committing the principal crime or to show the history and natural development of the facts). Accordingly, appellant's motion to sever was properly denied. *See, e.g., Commonwealth v. Clayton*, 516 Pa. 263, 277, 532 A.2d 385, 392 (1987), *cert. denied,*

485 U.S. 929 (1988) (there was sufficient similarity between two murders to allow admission of either at trial of other for purpose of showing common scheme and hence motion to sever charges was properly denied); *Commonwealth v. De-Hart*, 512 Pa. 235, 245, 516 A.2d 656, 661 (1986) (consolidation of trial of defendant's escape charge with charges of homicide, robbery and burglary was proper).

### *Admissibility of Photographs*

The third issue raised by appellant is whether the trial court erred in admitting into evidence at trial (over defense counsel's objection) certain photographs taken inside Room 161 of the Roosevelt Inn, a hotel room in which appellant resided approximately one month prior to the murder at issue. Appellant argues that the introduction of pictures of his hotel room depicting graffiti stating "Fuck the Police" was erroneously admitted because the Commonwealth failed to establish any nexus between the graffiti and Officer Montijo's death. Appellant argues that since no such nexus was established the evidence had no probative value, or, in the alternative, that the photographs still should have been excluded because the prejudice caused by the introduction of those photographs far outweighed their probative value. At the outset, the admissibility of evidence is a matter addressed solely to the discretion of the trial court and may be reversed only upon a showing that the court abused its discretion. *Commonwealth v. Claypool*, 508 Pa. 198, 203–204, 495 A.2d 176, 178 (1985) (citation omitted). Evidence is considered relevant if it logically tends to establish a material fact in the case, tends to make the fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. *Commonwealth v. Spiewak*, 533 Pa. 1, 8, 617 A.2d 696, 699 (1992) (citation omitted).

Here, less than one month before Officer Montijo's murder, the police were called to the Roosevelt Inn in Philadelphia to respond to a reported fight in the hallway. The fight allegedly occurred just outside of room 161, which was registered to appellant and occupied by appellant and a young

woman. The wall of appellant's room was covered in graffiti and included the words "Fairhill Street Gang" (referring to the street on which appellant lived), and "Fuck the Police." These writings were signed "Spock," which was appellant's street name. After the murder, the police returned to Room 161 and took photographs of the graffiti and these pictures were subsequently introduced into evidence. The expression "Fuck the Police" clearly reveals appellant's generally malicious attitude toward police officers. The photographs of the graffiti, therefore, were relevant to show that appellant had a fixed bias against police officers and that such bias could have contributed to appellant's motive for and malice in shooting Officer Montijo, a police officer. As such, the evidence was properly admissible. *See Commonwealth v. Glover*, 446 Pa. 492, 495–496, 286 A.2d 349, 351 (1972) (evidence that defendant punched eventual murder victim in the mouth and threatened to secure a weapon "to kill this M.F." was properly admitted to demonstrate the existence of an aggressive malice by the defendant against his victim).

Moreover, in an exercise of caution, the trial court instructed the jury that this evidence was introduced for a limited purpose namely, only as proof of motive, state of mind and ill will:

> You must not regard this evidence as showing that the defendant was a person of bad character or criminal tendencies of which you might be inclined to infer guilt. If you find this defendant guilty it must be because you are convinced by the evidence that he committed the crimes charged and not because he is or you believe he is wicked or has committed other offense or improper conduct.

N.T. 6/27/91 at 135.

We find that this instruction clearly set forth a correct and useful principle of law and limited the purpose for which the evidence was offered.[8] The jury is presumed to have followed

---

8. Appellant would not normally be heard to complain on appeal since no objection was made to the jury instruction now complained of on appeal. *See Commonwealth v. Byrd*, 490 Pa. 544, 559, 417 A.2d 173, 181 (1980) (objections to charge which were not timely presented to the

the court's carefully issued limiting instruction. *See Commonwealth v. Baker,* 531 Pa. 541, 559, 614 A.2d 663, 672 (1992) (our law presumes that juries follow the court's instructions as to the applicable law). Significantly, trial counsel requested no further instructions and no mistrial, thereby evidencing his apparent satisfaction with the limiting instruction before the verdict was rendered. Thus, under these circumstances, no reversible error occurred.

### *Admissibility of Prior Bad Acts and Prior Criminal Activity*

The fourth issue raised by appellant is whether the trial court denied appellant a fair trial by permitting evidence of allegedly unrelated prior bad acts and criminal activity.[9] Specifically, he claims that evidence regarding appellant's prior drug activities was improperly admitted in that it was irrelevant, highly prejudicial and offered solely to show that he was a person of bad character and criminal tendencies such as to inflame the jury and arouse prejudice against him. Subject to certain exceptions, evidence of criminal activity unrelated to the charge is inadmissible against a criminal defendant. *Commonwealth v. Billa,* 521 Pa. 168, 177, 555 A.2d 835, 840 (1989) (citation omitted). However, evidence of prior criminal activity is relevant and admissible when offered to prove motive or malice. *Commonwealth v. De Vaughn,* 488 Pa. 629, 631, 413 A.2d 660, 661 (1980) (citation omitted).

trial court were not properly before the Supreme Court on appeal). However, we will address the merits of this claim in accordance with the relaxed waiver rule applicable in capital cases. *See Commonwealth v. Crispell,* 530 Pa. 234, 242 n. 1, 608 A.2d 18, 22 n. 1 (waiver rule relaxed in death penalty cases).

9. Appellant's "Statement of Questions Involved" section of his brief also includes a reference that the trial court denied him a fair trial by permitting the prosecutor to repeatedly question witnesses as to appellant's propensity to carry weapons. *See* Brief for Appellant at iii, 32. However, appellant fails to even mention this claim again (much less develop this claim) in the "Argument" section of the brief. Accordingly, the claim is waived. *See Commonwealth v. Jackson,* 494 Pa. 457, 459 n. 1, 431 A.2d 944, 945 n. 1 (1981) (citations omitted) (issue included in appellant's "Statement of Questions Presented" on appeal was nevertheless waived by appellant's failure to address issue in his appellate brief).

 Here, evidence of appellant's prior drug activities was offered to show that appellant bore a personal grudge and an aggressive malicious dislike of Officer Montijo because, as stated *supra*, Officer Montijo had arrested appellant before on unrelated drug charges, because it was shown appellant thought Officer Montijo secretly observed neighborhood drug activities while off duty and reported them to the police, and because appellant thought Officer Montijo was "bothering" him. *See, e.g., Commonwealth v. Reid,* 537 Pa. 167, 181–182, 642 A.2d 453, 461 (1994) (evidence of defendant's connection with Junior Black Mafia was admissible to prove motive in prosecution for first-degree murder because inference from such evidence was that defendant was a Junior Black Mafia enforcer who killed victim for stealing drugs); *Commonwealth v. Hall,* 523 Pa. 75, 84, 565 A.2d 144, 149 (1989) (prosecution could question defendant and others about defendant's past drug dealings to establish defendant's revenge motive for killings of drug dealers who recently cheated defendant in large drug deal); *Commonwealth v. Beasley,* 504 Pa. 485, 495, 475 A.2d 730, 736 (1984) (prosecutor's remarks properly elicited evidence of defendant's motive for shooting his police officer victim because the remarks were directed at the facts that defendant was in possession of a gun when approached by the police officer at a restaurant, that defendant had previously threatened a patron, and that, when approached, defendant fatally shot the police officer to avoid capture).

 Moreover, the possible prejudicial effect of a reference to a defendant's prior criminal conduct may, under certain circumstances, be removed by an immediate cautionary instruction to the jury. *See Commonwealth v. Rollins,* 525 Pa. 335, 343, 580 A.2d 744, 748 (1990) (although evidence that defendant had traded methamphetamine for cocaine with murder victim's brother-in-law on occasions other than night of murder was admissible, trial court was required to issue appropriate limiting instruction to jury). Here, the trial court *sua sponte* immediately issued a limiting instruction and told the jury that this evidence was:

offered for the limited purpose of helping to establish the circumstances surrounding which this offense is alleged to have come out of. You are not to use any evidence of [appellant's] selling drugs or participating in the sale of drugs in your determination as to his guilt or innocence.

N.T. 6/19/91 at 33.

We find this instruction sufficiently described the limited purpose for which the testimony was admitted. Appellant neither requested additional instructions or other remedial actions nor demonstrated why under these circumstances that this instruction did not cure any prejudice he may have suffered. *Baker, supra,* 531 Pa. at 559, 614 A.2d at 672. Accordingly, appellant has failed to show that he suffered undue prejudice from the introduction of this evidence and that he was, therefore, denied a fair trial.

### Ineffectiveness of Trial Counsel

The fifth issue raised in appellant's brief is whether trial counsel was ineffective for failing to object to the introduction of allegedly highly prejudicial and irrelevant "other crimes" evidence. A criminal defendant sustains a claim of ineffectiveness of counsel by proving: (1) that the underlying claim is of arguable merit; (2) that counsel's performance had no reasonable basis; and (3) that counsel's ineffectiveness worked to his prejudice. *Commonwealth v. Edmiston,* 535 Pa. 210, 237, 634 A.2d 1078, 1092 (1993) (citation omitted).

Appellant first argues that trial counsel was ineffective for failing to object to a Commonwealth witness' unsolicited testimony that appellant allegedly fought with "some black guys" the day of the shooting. Appellant alleges that during a 10–day trial this passing reference to a fight that occurred earlier the day of the murder deprived him of a fair trial because such evidence tended only to show appellant's criminal disposition. We disagree.

The Commonwealth called this witness to testify that a few hours before appellant killed Officer Montijo, appellant had fired several .38 caliber rounds at Jose Rodriguez at a

neighborhood bar. The Commonwealth's direct examination on the subject directly contradicted appellant's statement to the police that he did not have a gun the night of the murder. In responding to the Commonwealth's questions regarding this topic, the witness testified that appellant had a gun in the bar earlier that night, that appellant knew Officer Montijo by sight and that he knew he was a police officer. N.T. 6/19/91 at 36, 39, 40, 43, 47–48. He further testified in the context of answering questions regarding appellant's possession of the .38 caliber gun that he had also seen appellant fight with some "black guys" earlier that day as well. This comment was not given in response to the prosecutor's questions and was simply blurted out. The Commonwealth failed to further examine or inquire into this area or otherwise draw upon it in its case. In view of the context in which this statement was given, an objection would have served only to highlight this fleeting reference which otherwise cannot reasonably be said to have deprived appellant of a fair trial. Therefore, trial counsel was reasonable in not objecting because where counsel's actions were reasonable, no ineffectiveness claim is found. *See Edmiston, supra.*

 Next, appellant argues that trial counsel should have objected to evidence from one Spencer Hutchins that appellant threatened his brother, Ty Hutchins, with a gun on the day of the murder because this testimony was irrelevant to any issue at trial. We disagree. This testimony was admissible to discredit appellant's statement to the police that he did not have a gun on the day he shot Officer Montijo. *See Commonwealth v. Sparrow,* 471 Pa. 490, 496, 370 A.2d 712, 715 (1977), *overruled on other grounds, Commonwealth v. Tarver,* 493 Pa. 320, 426 A.2d 569 (1981) (where defendant, in testifying at trial in his own behalf, gave an account of his actions which differed from that which he gave the police during interrogation following his arrest, it was permissible for the prosecuting attorney, on cross-examination, to confront defendant with his prior testimony). As such, defense counsel did not render ineffective assistance of counsel on this basis. Further, evidence of a defendant's other criminal acts may be

introduced if it comprises a part of a sequence of events which is part of the natural development of the facts at issue. *Billa, supra,* 521 Pa. at 177, 555 A.2d at 840. Here, testimony was offered which established that on the day of the murder appellant pointed a pistol at Ty Hutchins and threatened to kill him because he believed that Ty had called his girlfriend a "bitch." Evidence of this terroristic threat, when coupled with evidence of the threats and assaults perpetrated by appellant on Jose Rodriguez and Diane Hernandez (which were reported to the police) was admissible to show that appellant's day-long rampage of violence reasonably led him to fear his capture by the police and eventual punishment by the Commonwealth, thereby causing him to resist arrest by Officer Montijo to the point of killing him. *See De Vaughn, supra,* 488 Pa. at 631, 413 A.2d at 661 (evidence of prior criminal activity is relevant and admissible when offered to prove motive or malice).

Moreover, as previously discussed, the trial court carefully instructed the jury that evidence of appellant's prior bad acts for which he was not on trial could not be used against him except as proof of motive, malice or ill will. We find that this instruction cured any potential impropriety that may have been arguably aroused by the comment. *See Richardson, supra,* 496 Pa. at 526, 437 A.2d at 1165 (the possible prejudicial effect of a reference to a defendant's prior criminal conduct may, under certain circumstances, be removed by an immediate cautionary instruction to the jury). In view of the admission of the testimony for the limited and proper purpose, coupled with the court's carefully and clearly crafted limiting instruction, appellant's counsel was not ineffective for failing to lodge an unnecessary objection. *See Edmiston, supra,* 535 Pa. at 237, 634 A.2d at 1092 (counsel cannot be deemed ineffective for failing to raise a meritless objection).

### *Prosecutorial Misconduct During the Guilt Phase*

Next, appellant argues that he was denied a fair trial by virtue of a pattern of intentional prosecutorial misconduct. Appellant cites eight different portions of the record to argue that the prosecutor continually sought to inflame the

jury during the trial with irrelevant and egregious comments and conduct.[10] Generally, a prosecutor is permitted to vigorously argue his case so long as his comments are supported by evidence and contain inferences which are reasonably derived from that evidence. *Commonwealth v. Hardcastle,* 519 Pa. 236, 254, 546 A.2d 1101, 1109 (1988). This court's consideration of claims of prosecutorial misconduct is centered on whether the defendant was deprived of a fair trial, not deprived of a perfect trial. *Commonwealth v. Holloway,* 524 Pa. 342, 353, 572 A.2d 687, 693 (1990) (citation omitted). In that regard, comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. *Id.* We note that this is a relatively stringent standard against which appellant must labor. *See, e.g., Commonwealth v. Marshall,* 523 Pa. 556, 570–571, 568 A.2d 590, 597 (1989) (prosecutor's reference to defendant's possession of stolen items taken from murder victims' apartment was not prosecutorial misconduct, where evidence of the items was admissible and prosecutor's remarks contained fair deductions and legitimate inferences to be drawn from the evidence).

 Further, to the extent appellant asserts throughout his brief that the jury took evidentiary notice of the prosecutor's allegedly prejudicial statements, we note at the outset

10. Appellant does not assert in his "Statement of Questions Involved" section of his brief that trial counsel was in any way deficient for failing to take certain measures to remove or reduce the prejudice caused by the prosecutor's alleged misconduct. Therefore, we will not consider the fleeting and sporadic interjections in the Argument section of his brief that counsel was ineffective for failing to move for a mistrial. Pa.R.A.P. 2116(a). *See also Baker, supra,* 531 Pa. at 562, 614 A.2d at 673 (generalized claims of ineffectiveness without particularized analysis must be rejected). Moreover, notwithstanding appellant's failure to explicitly develop a claim of trial counsel ineffectiveness, the alleged prosecutorial misconduct during the guilt phase did not entitle him to a new trial (*see* discussion *infra*); hence, trial counsel's failure to request a mistrial caused no prejudice, thereby effectively voiding any claim of ineffectiveness on this basis. *See Edmiston, supra* (defendant must prove that trial counsel's ineffectiveness prejudiced his defense).

that it is well settled in the law that attorneys' statements or questions at trial are not evidence. *Commonwealth v. Green*, 525 Pa. 424, 461, 581 A.2d 544, 562 (1990) (noting with approval court's instruction that an attorney's comments do not constitute evidence upon which the jury may base its verdict). Indeed, the trial court clearly instructed the jury to this effect. N.T. 6/18/91 at 17–18. Juries are presumed to follow the court's instructions. *Baker, supra*, 531 Pa. at 559, 614 A.2d at 672. We address the specific allegations of error *seriatim* and find appellant's claims of prosecutorial misconduct during the guilt phase of his trial to be without merit.

Appellant first asserts that prosecutorial misconduct occurred during the Commonwealth's redirect of Officer Jose Rivera, the officer who discovered Officer Montijo's body at the scene of the crime, with respect to his inability to recognize the victim. Specifically, appellant claims error for the prosecutor's question, asked over defense counsel's objection, "when [Officer Montijo, the victim] was lying there and you didn't recognize him, was it because he was not in uniform or was it because his face was swollen up and covered in blood?" Appellant claims this was so prejudicial as to have deprived him of a fair trial because it focused the jury's attention on the gruesomeness of the Officer Montijo's death rather than on whether the evidence was probative of some fact supporting the Commonwealth's case against him.

Our review of the record reveals that the Commonwealth asked this question on redirect to counter appellant's attempt during cross-examination of Officer Rivera to prove that Officer Montijo was not recognizable at the time of the shooting by even his fellow police officers so as to bolster his own argument at trial that he did not know he was shooting a police officer.[11] Redirect examination of this sort is clearly proper. *See Commonwealth v. Tedford*, 523 Pa. 305, 334–335, 567 A.2d 610, 624 (1989) (when defendant testified at

---

11. The killing of a police officer in the course of his official duties is an aggravating circumstance for a capital jury to consider in assessing the applicability of the death penalty during the penalty phase. 42 Pa.C.S. § 9711(d)(1).

trial that he had previously known rape and murder victim, prosecutor had right in cross-examining defendant to inquire into defendant's pretrial statement to state trooper that he had no knowledge of victim and that he had not seen or contacted victim on day of her death). Moreover, the prosecutor's question was properly based on earlier testimony elicited from Officer Rivera on direct examination, to which defense counsel made no objection, that he failed to recognize the victim when he found him because "[h]is face seem[ed] to be swollen, bleeding out the mouth, just couldn't recognize him." N.T. 6/20/91 at 19. A prosecutor's statements based on the evidence already of record are presumptively not error. *See Commonwealth v. McNair*, 529 Pa. 368, 374, 603 A.2d 1014, 1017 (1992) (prosecutor's claim during closing statement that defendant may have been motivated by injury to non-testifying witness when he shot victims was not misconduct in murder prosecution because evidence at trial created legitimate inference that defendant shot victims in response to what witness may have told him). *See also Commonwealth v. Brown*, 467 Pa. 512, 516, 359 A.2d 393, 395 (1976) (no error lies where no objection to the introduction of evidence is timely made).

Additionally, assuming *arguendo* error did arise from this question, the prosecutor's restatement of the underlying facts on redirect examination was merely harmless error since evidence of the victim's bloodied and swollen face was already admitted. *See Commonwealth v. Fay*, 463 Pa. 158, 160, 344 A.2d 473, 474 (1975) (where five eyewitnesses placed defendant at the scene of the homicide with a weapon in his possession and firing shots at the decedent, introduction by prosecutor of nine-millimeter semiautomatic weapon was, if error, harmless beyond a reasonable doubt). Furthermore, defense counsel's objection to the prosecutor's statement was sustained and no responsive answer was given. The trial court instructed the jury that the prosecutor's questions were not to be considered evidence. N.T. 6/18/91 at 17–18. *See also Baker, supra,* (our law presumes that jury follows a court's instructions as to the applicable law); *Green, supra,*

525 Pa. at 461, 581 A.2d at 562 (noting with approval court's instruction that an attorney's comments do not constitute evidence upon which the jury may base its verdict). After considering all of the circumstances surrounding the prosecution's question, we conclude that this alleged incident of prosecutorial misconduct was properly cured by the cautionary instruction given. *See Commonwealth v. Richardson*, 496 Pa. 521, 526, 437 A.2d 1162, 1165 (1981) (determination of whether a curative instruction sufficiently overcomes possible prejudice to appellant involves consideration of the circumstances under which the evidence was given and its probable effect on the jury). Accordingly, this claim fails.

Next, appellant asserts that over a defense objection the prosecutor objected in an improper and highly prejudicial manner to defense counsel's cross-examination of the Commonwealth's forensic expert. During defense counsel's questioning of the Commonwealth's forensic expert regarding the identification of the blood type of blood found on the glove and sunglasses, the prosecutor objected as follows: "Objection, excuse me, objection. Those items [a glove and a pair of sunglasses] were found in a pool of blood where the body was found. What are we doing?" N.T. 6/24/91 at 29–30. Appellant claims the prosecutor's objection was improper because it again unduly inflamed the passions and prejudices of the jury against him.

The Commonwealth's expert, however, had already testified that he could not identify the blood type of the pool of blood in which the victim's body was found. The content of the prosecution's objection, then, referred to evidence previously admitted without objection that these items had been taken from a pool of blood in which the victim's body was found. Appellant fails to explain why the prosecutor's reference in the objection to properly admitted evidence deprived him of a fair trial. Accordingly, this claim fails. *See Hardcastle, supra,* 519 Pa. at 254, 546 A.2d at 1109 (a prosecutor is permitted to vigorously argue his case so long as his comments are supported by evidence and contain inferences which are reasonably derived from that evidence). *See also Brown,*

*supra,* (no error lies where no objection to the introduction of evidence is timely made).

■ Appellant next argues that the prosecutor's statement made over defense counsel's objection to defense witness Anthony Barnes (during the prosecutor's cross-examination of him) "Don't look over there sir, there is no answer" was improper because it implied to the jury that defense counsel was coaching the witness. Significantly, appellant does not assert that the prosecutor's statement deprived him of a fair trial, but only that the comment implied that defense counsel engaged in improper behavior. However, defense counsel was not on trial, appellant was. Accordingly, no relief is due on this point. *See Holloway, supra,* 524 Pa. at 353, 572 A.2d at 693 (claims of prosecutorial misconduct are evaluated against the standard of whether the defendant was deprived of a fair trial, not deprived of a perfect trial).

Next, appellant argues that prosecutorial misconduct occurred during the prosecutor's cross-examination of this same witness when the prosecutor asked in the presence of the jury if defense counsel would provide him with a copy of a handwritten statement by Barnes. In response to the prosecutor's request, the trial court, at sidebar, then ordered the defense to turn the original handwritten statement over to the Commonwealth to correct the concealment of evidence. N.T. 6/25/91 at 167–168. Appellant alleges that the prosecutor's request to defense counsel that he provide the Commonwealth with a defense witness' prior statements improperly suggested that the defense withheld evidence from the prosecution in the jury's presence.

■ The record reveals and appellant does not dispute that despite the Commonwealth's pretrial discovery requests to defense counsel that it be provided with all statements given by this defense witness, defense counsel had only provided the Commonwealth with an edited, typewritten synopsis of Barnes' handwritten statement. Indeed, the prosecutor only learned of Barnes' handwritten statement during its cross-examination of Barnes. By making his request during

cross-examination, the prosecutor simply sought discovery of an item which had been purposefully withheld by the defense. Its request therefore was entirely proper and was a risk defense counsel took by not disclosing evidence to the Commonwealth. The prosecutor can hardly be faulted for requesting information improperly withheld. Accordingly, no error lies on this point. *See* Pa.R.Crim.P. 305(E) (if at any time during the course of the proceedings it is brought to the attention of the court that either party has failed to supply the opposing party with relevant evidence, the court may order such party to permit discovery). *Accord Commonwealth v. Brinkley,* 505 Pa. 442, 449, 480 A.2d 980, 984 (1984) (where the defense has in its possession pretrial statements of its witnesses which have been reduced to writing and relate to the witness' testimony at trial, it must, if requested, furnish copies of the statements to the Commonwealth).

Appellant next argues that the prosecutor acted improperly during the cross-examination of defense witness Katherine Santiago. The defense called Santiago to testify regarding her eyewitness account of the events immediately leading to Officer Montijo's murder. In cross-examination regarding her testimony that she was present at the murder scene, the prosecutor made the following allegedly prejudicial remarks over defense objections: "Are you sure you were out there [at the scene of the murder], young lady?"; "You are not here to help [appellant], are you?"; and a sarcastic response "Right" to Ms. Santiago's testimony that she was indeed at the murder scene. Appellant contends that the prosecutor's comments served to improperly comment on Ms. Santiago's credibility. However, a prosecutor is allowed to convey to the jury that, based on the evidence, the witness' credibility may legitimately be called into question. *Commonwealth v. Graham,* 522 Pa. 115, 119, 560 A.2d 129, 130–131 (1989) (where a witness testifies to plainly impossible or incredible factual situations, the prosecutor or defense counsel may comment that certain portions of witness' testimony are unbelievable, and such comment would constitute a fair inference from irrefutable evidence). Here, the prosecutor made these com-

ments in response to and in order to highlight several significant inconsistencies between Ms. Santiago's testimony and the evidence already introduced. While the prosecutor's comments were to some extent unnecessarily argumentative in nature, they cannot be said to have so tainted a ten day trial so as to deprive appellant of a fair trial. On this basis, appellant's claim fails. *Commonwealth v. Floyd,* 506 Pa. 85, 93, 484 A.2d 365, 369 (1984) (prosecutor's comment during summation on defendant's credibility, to effect that defendant lied to the jury when he denied ever having carried a gun, was not reversible error because statement was fair inference from the evidence rather than a broad characterization of the witness' entire testimony as a lie, and therefore could have been no more harmful to defendant's case than simple juxtaposition of defendant's denial and evidence of prior weapons convictions).

Next, the prosecutor asked appellant if he had pointed a gun at Ty Hutchins at approximately 3 p.m. on the day of the murder and whether he had also threatened to kill him on the same date. Appellant denied that such an incident took place. The prosecutor then asked appellant "[d]id you ask Ty [Hutchins] to come in and tell us that [the allegation that appellant pulled a gun on Ty Hutchins] is not true, that [it] never happened?" Defense counsel objected and after sustaining the objection, the trial court instructed the jury that appellant was not required to prove anything at trial. No mistrial or further instructions were requested by defense counsel.

At the outset, we find that the trial court's prompt and accurate cautionary instruction amply clarified that appellant bore no burden of proof at his trial. A jury is presumed to follow such an instruction. *See Baker, supra,* 531 Pa. at 559, 614 A.2d at 672 (our law presumes that a jury follows the court's instructions such that prejudicial error may be cured by an appropriate instruction by the court). Moreover, after considering all of the circumstances surrounding this conduct, we conclude that any prosecutorial misconduct which arose was properly cured by this cautionary instruction.

Further, the prosecutor's inquiry on this matter was in response to appellant's own direct examination testimony that Ty Hutchins' testimony would have supported his argument that this incident never happened. Having "opened the door" to this subject, appellant cannot now complain because the Commonwealth chose to further examine what was behind that door. *See Commonwealth v. Ford*, 539 Pa. 85, 104–106, 650 A.2d 433, 442 (1994) (defendant's prior criminal record is not admissible as evidence but if defendant opens an evidentiary door concerning his past criminal record, then Commonwealth is allowed to cross-examine on that issue). *See also Commonwealth v. Yarris*, 519 Pa. 571, 597, 549 A.2d 513, 526 (1988), *cert. denied*, 491 U.S. 910, 109 S.Ct. 3201, 105 L.Ed.2d 708 (1989) (prosecution's inquiry as to why defendant's good friend (with whom he spent the day of the murder) did not testify, did not impermissibly shift burden of proof to defendant; defendant testified he spent the day with his good friend and the prosecution merely challenged defendant's failure to produce a witness who could have corroborated defendant's version of the events of the day).

Appellant next cites to 21 pages of the record to show that the prosecutor improperly commented on appellant's credibility on numerous occasions during his cross-examination. Appellant fails, however, to specifically identify the alleged prejudicial comments because "in the interest of judicial economy," such references would be "too numerous" to list. He neither explains with any particularity why the unidentified comments or statements specifically caused him undue prejudice nor reveals why any particular statement was supposedly improper. This Court will not make appellant's arguments for him. Pa.R.A.P. 2119(a). *See also Commonwealth v. Jackson*, 494 Pa. 457, 459, 431 A.2d 944, 945 (1981) (the failure of petitioner's argument in his brief to separately address each claim presented waived consideration of claim). Accordingly, absent even a meager attempt to show how these statements deprived him of a fair trial or worked to form in the jury's minds a fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and

render a true verdict, no relief is due. *See Holloway, supra,* 524 Pa. at 353, 572 A.2d at 693.

Next, appellant argues that during closing argument at trial the prosecutor improperly stated "if [the jury doesn't] convict the defendant, then we'd better start getting a lot more cemetery plots for our officers." Appellant asserts that this deprived him of a fair trial because the prosecutor's statement inflamed the jury to return a guilty verdict solely to put him behind bars so that other police officers would be safe from his murderous rampages. However, a claim of prosecutorial misconduct must be viewed in light of the entire context in which the alleged misconduct arose. *Commonwealth v. Thompson,* 538 Pa. 297, 311–312, 648 A.2d 315, 322 (1994). Here, appellant blatantly mischaracterizes the prosecutor's statement because the entire context of the statement shows that the prosecutor was not telling the jury that the failure to convict appellant would endanger the lives of police officers, but that if the law of self-defense for police officers was any different than what it is, police officers would be subject to heightened risk of death in the line of duty:

> It is clear from the evidence, and I'm going to show you how this defendant fired the first shot out there.... When a police officer goes up to a man who is committing a crime and says give yourself up and that person goes for his gun not to give himself up but to kill the police officer it doesn't matter that the police officer fires first and it doesn't make it any less of a murder when that person puts a bullet in the brain of a police officer's skull. And if it were any other way then I'll tell you what, we'd better start getting a lot more cemetery plots for our police officers when they go to make arrests for people on the street.

N.T. 6/27/91 at 67–68.

Appellant fails to demonstrate how the prosecutor's colorful but reasoned explanation of the controlling law of police self-defense during an arrest (*see* 18 Pa.C.S. § 508) somehow translates into a basis for relief. It is well established that a prosecutor is permitted to vigorously argue his case so long as

his comments are supported by evidence and contain infer-
ences which are reasonably derived from that evidence. *See
Hardcastle, supra,* 519 Pa. at 254, 546 A.2d at 1109.

In sum, our review of the record and our analysis of
appellant's eight charges of prosecutorial misconduct during
the guilt phase reveal that appellant's arguments are based on
misrepresentations and exaggerations of the record and on a
misapplication of relevant law and do not merit any relief by
this Court in light of the stringent standard articulated in
*Holloway, supra,* 524 Pa. at 353, 572 A.2d at 693.

### Prosecutorial Misconduct During the Penalty Phase

Appellant's final two arguments relate to alleged
prosecutorial misconduct during the penalty phase of the trial.
First, appellant asserts that the prosecutor committed miscon-
duct when, over defense counsel's objection, he asked a de-
fense expert psychologist if his opinion that appellant felt
remorse for Officer Montijo's death would change if he knew
about a post-verdict exchange between appellant and Officer
Montijo's family. The basis of this argument is that post-
verdict, appellant made an obscene gesture at members of the
victim's family by raising his right middle finger to them and
told them that the slain officer "got what he deserved."
During the penalty phase, appellant presented this psycholo-
gist to testify that appellant felt remorse for Officer Montijo's
death in an effort to persuade the jury to mitigate their
consideration of appellant's penalty for Officer Montijo's mur-
der. Appellant argues that the hypothetical was improper
because there was no evidence of record supporting the hypo-
thetical as required by *Commonwealth v. Petrovich,* 538 Pa.
369, 372, 648 A.2d 771, 772 (1994) (an expert may give his
opinion in response to a hypothetical, provided that the set of
facts assumed in the hypothetical is eventually supported by
competent evidence). However, the issue of appellant's re-
morse (or lack thereof) for Officer Montijo's death was not
introduced until the defense put its psychologist on the stand.
The prosecution, therefore, had no opportunity to present the
testimonial evidence of appellant's confrontation with Officer
Montijo's family before posing the hypothetical to the psychol-

ogist. At a sidebar conference, the Commonwealth informed the trial court that it was prepared to offer the testimony of 20 potential witnesses to prove the occurrence of the post-verdict event. Upon learning of the basis of the Commonwealth's hypothetical, the trial court ruled that the Commonwealth's question was proper and that the Commonwealth could present the evidence on the incident if the expert testified that it might alter his opinion. The prosecutor committed no misconduct on this point because a good faith basis for the hypothetical existed at the time the question was posed. *Petrovich, supra.* After the sidebar discussion, the expert, upon further cross-examination, refused to apply the term "remorse" to appellant's feelings regarding his murder of Officer Montijo. On this basis, the trial court ultimately ruled the issue moot and declined to let the prosecutor continue to proceed with this line of questioning. Under these circumstances, the prosecutor clearly did not commit misconduct merely by posing his hypothetical question to test a defense expert's opinion.

Further, no error lies on this point because the jury was instructed that only witnesses' answers, and not counsels' questions, are evidence. *See Green, supra,* 525 Pa. at 461, 581 A.2d at 562 (an attorney's comments do not constitute evidence upon which the jury may base its verdict). Under these circumstances, we see no basis to ignore the presumption that the jury failed to follow the trial court's instruction.

The final issue raised by appellant is whether defense counsel rendered ineffective assistance in failing to object to the prosecutor's allegedly inflammatory and prejudicial comments during the penalty phase. Appellant argues that the prosecutor in this case overstepped the lines of oratorical flair when he argued to the jury that appellant was:

[a] man who for eight years sold drugs on Fairhill Street, sold coke. And what does that prove about the contractor [sic] of the defendant, a drug dealer? I mean, what is a drug dealer? A drug dealer is a leech on society, ladies and gentlemen. A drug dealer is somebody who sucks the life blood out of our community because when all the kids and the young adults, when they get hooked on drugs that [are]

sold by drug dealers like the defendant and when they can't get jobs or stay in school, when they have to turn to crime because of the drugs sold by people like this defendant, Spock LaCava, what does that say about his character? That is what a drug dealer is. Can you imagine being one of the decent people on Fairhill Street who has to live there very day? I mean, we kept hearing the defense about how the neighborhood has changed. Sure it's changed. It's changed because of people like him. They are the ones who wreck the neighborhood. They are the ones who wreck the Fairhill Streets and the Butler Streets and all the other streets. It's the drug dealer who wrecks it. Can you imagine trying to live on Fairhill Street and you are sitting there in your home and you want your kids to go out and play but you know they can't go out and play because the cars are lined up and down the block from people who want to buy drugs, and these guys are out on the street are [sic] carrying their guns around, they are shooting at the time because of guys like this and you don't know if your kids can go out on the Street because God, when they are 13 or 14 you don't know if the Spock LaCavas are going to come up and say 'hey, kid, you want to buy some cocaine?'

N.T. 6/29/91 at 36–37.

As previously stated, comments by a prosecutor generally do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively. *Holloway, supra,* 524 Pa. at 353, 572 A.2d at 693.

 Our review of the prosecutor's statements challenged in this appeal leads us to the conclusion that the sole purpose of the prosecutor's comments was to attempt to turn the jury's sentencing of appellant into a plebiscite on drugs and drug dealers and their destructive effect on society. The prosecutor attempted to expand the jury's focus from the punishment of appellant on the basis of one aggravating circumstance (i.e., that appellant killed a police officer acting in the line of duty), to punishment of appellant on the basis of society's victimiza-

tion at the hands of drug dealers. The essence of the prosecutor's argument was to convince the jury to sentence appellant to death as a form of retribution for the ills inflicted on society by those who sell drugs. The prosecutor prejudiced the jury by forming in their minds a fixed bias and hostility toward appellant with these highly prejudicial statements. We believe the jury was unavoidably unable to dispassionately and objectively evaluate the evidence in a sober and reflective frame of mind.

In short, the prosecutor painted a vivid picture that society is under heavy attack and that this jury was in a unique position to respond to that attack by sentencing appellant to death because he was a drug dealer rather than because he was a brutal killer of a police officer, a crime that society has deemed worthy of the death penalty. This, we believe, went far beyond the permissible limits of oratorical flair and aggressive advocacy. *See Commonwealth v. Chambers*, 528 Pa. 558, 584, 599 A.2d 630, 643 (1991) (prosecutor's statement to jury during closing argument of sentencing proceeding that the Bible says "and the murderer shall be put to death" was prejudicial error). Because appellant correctly argues that the prosecutor's comments during the penalty phase were so prejudicial as to deprive him of a fair penalty determination, we find that trial counsel had no reasonable basis for failing to object to these comments which left the jury with a fixed bias against appellant based upon comments not grounded in evidence of record. Further, we believe that counsel's failure to object was more susceptible to causing an unfair penalty determination since, here, the jury found two mitigating circumstances and only one aggravating circumstance. The prosecutor's comments were such that they could have impermissibly shifted the balance in favor of a death sentence. Therefore, since trial counsel could not have had a reasonable basis for not objecting, we find trial counsel ineffective. *See Commonwealth v. Watts*, 488 Pa. 214, 218, 412 A.2d 474, 476 (1980) (failure of defendant's counsel to object to statements contained in prosecutor's closing remarks that "I want blood all over the courtroom. I want to upset you about

194

this case" amounted to ineffective assistance of counsel); *Commonwealth v. Smith*, 478 Pa. 76, 81, 385 A.2d 1320, 1323 (1978) (failure of counsel to raise issue of prosecutorial misconduct arising from improper and prejudicial statements constituted ineffective assistance of counsel).

Accordingly, this Court affirms appellant's convictions, vacates the sentence of death, and remands this matter for a new sentencing hearing. Jurisdiction relinquished.

PAPADAKOS, J., did not participate in the decision of this case.

CAPPY, J., concurs in the result only.

MONTEMURO, J., is sitting by designation.