737 A.2d 196

COMMONWEALTH of Pennsylvania, Appellee,

v.

Alfred JASPER, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 28, 1997.

Decided July 21, 1999.

Jules Epstein, Philadelphia, for A. Jasper.

Catherine Marshall, Hugh J. Burns, Jr., Philadelphia, Robert A. Graci, Office of the Attorney General, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Justice.

In 1986 appellant was convicted of first degree murder in the shooting death of one John Wilson. On direct appeal, this court affirmed the conviction, but vacated the death sentence and remanded the case for a new penalty hearing. Following a second penalty hearing, appellant was again sentenced to death. This appeal, which raises six claims of error, is from the second penalty proceeding. We vacate the death sentence and remand for a new penalty hearing.

Because of our disposition of this case, we address only one issue raised by appellant, that the trial court erred in instructing the jury that it was not the final arbiter of the sentence. The court stated:

Now, with regard to death penalty, you know what that implies. Somewhere down the line, if you do impose the death penalty, the case will be reviewed thoroughly. And after thorough review the death penalty may be carried out. I won't go into all the various reviews that we have. That shouldn't concern you at this point.

N.T. December 9, p. 120.

This court, citing *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), has held that prosecutorial remarks that minimize the jury's sense of responsibility for a verdict of death constitute reversible error. *Commonwealth v. Baker*, 511 Pa. 1, 511 A.2d 777, 787 (1986).[1] The sole issue in this case is whether the comments set out above minimized

---

1. The United States Supreme Court in *Caldwell* held that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." 472 U.S. at 328–29, 105 S.Ct. 2633.

In *Baker* the prosecutor argued to the jury that the ultimate responsibility for imposing the death penalty was with the appellate courts.

the jury's sense of responsibility in violation of *Caldwell* and *Baker.*

The Commonwealth argues that the court's comments did not minimize the jury's sense of responsibility. First, it points out that in *Caldwell* the jury was led to believe that the responsibility for the death penalty was with the appellate courts rather than with the jury itself, and in this case, the trial court instructed the jury three times that its determination was not merely a recommendation, but that it was actually deciding the sentence.

We disagree that these instructions cured the remark set out above, for the plain import of the court's remarks is that although the jury may impose the death penalty, it may not be carried out, thus removing from the jury the responsibility for imposing the death penalty.

Next, the Commonwealth argues that because this court affirmed death sentences in *Commonwealth v. Abu–Jamal,* 521 Pa. 188, 555 A.2d 846 (1989) and *Commonwealth v. Beasley,* 524 Pa. 34, 568 A.2d 1235 (1990), the death penalty in this case must be affirmed. Both of these cases also involved challenges to the propriety of remarks concerning the appellate process. In *Abu–Jamal,* this court affirmed the sentence of death where we determined that the prosecutor's remarks in context created no risk that the jury would abdicate its responsibility and where the prosecutor responded to a defense argument that appellant might be executed without adequate review by stating that there would be "appeal after appeal after appeal." That case has no relevance to this case, where the statement at issue was not in response to an argument raised by the defense.

In *Beasley,* we affirmed the sentence of death where the prosecutor argued that the defendant would pursue endless appeals to all levels in the court system and stated, "when can you remember was the last person who was executed in Pennsylvania?" *Beasley,* 568 A.2d at 1236. In explaining this decision, we noted that the prosecutor did not suggest that this court would make the final decision regarding sentencing,

but referred to the appeal process in general; that that trial court indicated to the jury that it was not merely recommending a sentence, but was "fixing the punishment at death or life imprisonment"; and that the prosecutor's comments could not have affected the jury because the jury had found no mitigating circumstances an two aggravating circumstances. 568 A.2d at 1237. In this case, the jury found one mitigating circumstance and two aggravating circumstances.[2] The claim that the affirmance of the death sentence in *Beasley* requires a similar affirmance here is, therefore, without merit.

As we stated in *Abu–Jamal,* remarks concerning the appellate process must be evaluated by the circumstances of each case. The central idea is that when remarks about the appellate process minimize the jury's sense of responsibility for the verdict of death, the sentence of death must be reversed. Here, by stating that any death sentence would be "reviewed thoroughly" and "may be carried out," the court unduly and unnecessarily emphasized the role of appellate courts and gave the impression that any mistake which the jury may make in imposing the death penalty would be corrected by appellate review. Since the jury found one mitigating circumstance, they were not required to impose the death penalty,[3] and in the absence of an instruction firmly fixing in the minds of the jury that they and they alone are responsible for the sentence, they may have erroneously believed that they could safely resolve doubts about the weight of mitigating circumstances against appellant, for any error would be corrected by others. This minimization of the jury's

2. The mitigating circumstance was that appellant aided a guard, his fellow prisoners, and helped his family. The two aggravating circumstances were that in killing the victim, he created a risk of death to another and that he had a significant history of felony convictions involving the threat or use of violence.

3. The Sentencing Code states:
   The verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in subsection (d) and no mitigating circumstances or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict must be a sentence of life imprisonment in all other cases.
   42 Pa.C.S. § 9711(c)(iv).

sense of responsibility for its verdict constitutes a violation of the Eighth Amendment of the United States Constitution as well as Article I, § 13 of the Constitution of Pennsylvania.[4]

We are unwilling to prescribe a per se rule forbidding mention of the appellate process in death penalty cases, since there may be extraordinary circumstances, such as response to a defense argument, that necessarily entail mention of the appellate process. In general, however, we see little benefit in reference to appellate review, for whenever a jury is told that another body will review the jury's decision, there is the possibility that these remarks will be construed to shift responsibility for imposition of the death penalty away from the jury and onto the appellate body.

The judgment of sentence of death is vacated and the case is remanded for a new penalty hearing.

Justice ZAPPALA files a concurring opinion.

Justice CASTILLE files a dissenting opinion in which Justice NEWMAN joins.

ZAPPALA, Justice, concurring.

I join the majority opinion, but write separately in order to express my deep concern about statements made in the prosecutor's closing arguments during the penalty hearing. Were review of the issue unavoidable because it was the only question to be decided, I would remand for a new penalty hearing based upon the following comments, which were intended to inflame the jurors' emotions rather than persuade them in their deliberations on mitigating and aggravating circumstances:

> When you're in prison, you wear the same clothes. You get your GED. You go to college. It's free. You don't pay

---

4. The Eighth Amendment of the United States Constitution provides:
   Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.
   Article I, § 13 of the Constitution of Pennsylvania provides:
   Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted.

tuition. No loans. You go to classes, vocational training. You can learn to be a carpenter. Maybe get assigned outside the prison to do farm work, yard work. You may not like it when you're in prison. That's too bad. You go to the weight room, work out. Play some basketball in the yard. Talk to the guys. It's almost like being in the military on the base. There might not be any women. You get exercise, food, clothing. You got movies, TV. Even now in State prisons they got cable TV. I don't have cable. That flag says they got rights. It's not that bad, and he is used to that kind of life.

N.T. 12/9/94 at 63–64.

Comments such as "I don't [even] have cable," and "[in prison] [y]ou go to college. It's free. You don't pay tuition. No loans," are designed to do nothing more than provoke the jurors into characterizing the sentencing options as whether to sentence the defendant to death or provide him for life with amenities that even law-abiding citizens may not enjoy.

We condemned similar tactics by a prosecutor during the penalty phase of a trial in *Commonwealth v. LaCava*, 542 Pa. 160, 666 A.2d 221 (1995). There, we succinctly explained that a new penalty hearing was necessary because:

[t]he prosecutor attempted to expand the jury's focus from the punishment of appellant on the basis of one aggravating circumstance (i.e., that appellant killed a police officer acting in the line of duty), to punishment of appellant on the basis of society's victimization at the hand of drug dealers. The essence of the prosecutor's argument was to convince the jury to sentence appellant to death as a form of retribution for the ills inflicted on society by those who sell drugs.

666 A.2d at 237. In the case at bar, the prosecutor attempted to expand the jury's focus from the punishment of appellant on the basis of aggravating circumstances to broader policies regarding prison conditions in a manner calculated to inspire resentment. The prosecutor's comments regarding prison conditions might have been appropriate if made in the context of prisoners' rights litigation, but were unacceptable during

the penalty phase of a capital trial where the jury is required to "dispassionately and objectively evaluate the evidence in a sober and reflective frame of mind." *LaCava,* 666 A.2d at 237.

What makes the prosecutor's comments even more egregious is that much of what was said about prison conditions is patently false and had absolutely no support in the record. Indeed, the Commonwealth concedes that certain details in the prosecutor's description of prison life were "technically unsupported." Commonwealth's Brief at 33. In its brief to this Court, the Commonwealth retreats from the prosecutor's argument to the jury that prisoners have cable television and free college education, instead recognizing that there is merely television in prisons and "at one time at least" inmates were eligible for college grants. *Id.* at 33–34. The trial judge also recognized that the prosecutor's comments were "unsupported by the record." Trial Court Opinion at 8.[1]

The Commonwealth seems to contend that the prosecutor's comments were nevertheless proper response to defense counsel's reference to prisons as boxes and tiny cells. I find this argument unavailing. Speeches comprised of false comments that lack any support in the record and that are not relevant to any aggravating circumstance are not proper rebuttal to a defense attorney's vague characterization of prisons as boxes or tiny cells. The prosecutor's comments far exceeded the scope of any rebuttal that may have been justified.

This Court has the responsibility to make sure that the ultimate penalty of death is not imposed as a result of "passion, prejudice or any other arbitrary factor." 42 Pa.C.S. § 9711(h)(3)(i). If we are to fulfill this responsibility, then we cannot condone comments like those made by the prosecutor in this case. Thus, in addition to the majority's reliance upon

---

1. The Commonwealth makes the unconvincing argument that although the prosecutor's descriptions of the details of prison life are "technically unsupported," they were not "palpably false." *Id.* at 33. The only part of the prosecutor's comments, quoted above, that the Commonwealth still stands by in its brief to this Court are the meager assertions that "[Prisoners] get to walk around, enjoy television, and participate in sports." *Id.* This is a far cry from what the jury heard the prosecutor argue at trial regarding prison life.

the trial judge's reference to the appellate process in his instructions to the jury as grounds for requiring a new penalty hearing, I would order a new penalty hearing based upon the prosecutor's improper remarks as well.

CASTILLE, Justice, dissenting.

I respectfully dissent from the majority's decision because I believe that a new penalty hearing is not warranted in this case. The majority held that the trial judge improperly reduced the jury's responsibility for imposing sentence by mentioning the appellate process. It is important to put the trial judge's instruction as quoted by the majority in its proper context and view the charge as a whole rather than focusing on one portion of it as the majority has done. The trial judge charged the jury that the jury was "not going to make a recommendation here. You are actually going to decide the sentence." · N.T. 12/9/94 at 106. Later, the court stated, "Your verdict, as I mentioned before is the actual punishment and is not merely a recommendation." N.T. 12/9/94 at 111. The court then charged the jury as follows:

> Now, with regard to the death penalty, you know what that implies. Somewhere down the line, if you do impose the death penalty, the case will be reviewed thoroughly. And after thorough review the death penalty may be carried out. I won't go into all the various reviews that we have. That shouldn't concern you at this point.

N.T. 12/9/94 at 120. In response to appellant's counsel's concerns regarding this passage, the trial judge repeated his second caution to the jury on this issue and stated that the jury's "sentence would be the actual sentence and not a mere recommendation." N.T. 12/9/94 at 126.

The majority found that the court's instructions concerning appellate review minimized both the jurors' sense of personal responsibility for the ultimate sentence and their expectation that the death sentence would ever be carried out. I find that this statement, when read in the context of the charge as a whole and considering the three separate statements made by the court that the jury's sentence would be the actual sentence

and not merely a recommendation, fully apprised the jury of its responsibility and the gravity of its undertaking and did not give rise to any expectation by the jury that a sentence of death would not be carried out.

The majority held that this Court's decisions upholding death sentences in *Commonwealth v. Abu–Jamal*, 521 Pa. 188, 555 A.2d 846 (1989) and *Commonwealth v. Beasley*, 524 Pa. 34, 568 A.2d 1235 (1990), support the grant of a new penalty hearing in the instant case. I disagree. In both of those cases, the prosecutor made comments regarding the appellate process, and this Court held that the propriety of such remarks must be evaluated on a case-by-case basis. Here, the trial judge's comments were given in the context of responding to a defense comment that while "the laws could change," appellant would not be eligible for release if sentenced to life imprisonment. N.T. 12/9/94 at 73–74. The court's comments were addressing the issue of the possibility of commutation and parole, not the appellate process. In fact, immediately following the quoted passage, the trial judge discussed the process for commutation of sentence:

> In Pennsylvania there is a procedure called commutation of sentence. Now, I don't have the statistics as to how often this happens, but it's certainly in the minority of cases, not the majority.
>
> The parole board in Harrisburg, consisting of several people, may after a hearing recommend to the Governor that the sentence be commuted. That's called commutation of sentence.

N.T. 12/9/94 at 121. Because the court's comments were made in response to a defense argument and did not directly address the appellate process, I would affirm the judgment of sentence.

Justice NEWMAN joins this dissenting opinion.