J-S17024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT L. RIGO, | |
| Appellant | No. 1069 WDA 2015 |

Appeal from the Judgment of Sentence November 5, 2014
In the Court of Common Pleas of Somerset County
Criminal Division at No(s): CP-56-CR-0000305-2014

BEFORE: GANTMAN, P.J., SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 02, 2016**

Robert L. Rigo ("Appellant") appeals from the judgment of sentence imposed in the Somerset County Court of Common Pleas on November 5, 2014.  We affirm.

In the early morning of March 14, 2014, Appellant and David E. Kimmel, Jr. ("the victim") attended a party.  A dispute arose between the men, which resulted in Appellant delivering a left-right punch combination to the victim's head.  The victim suffered multiple mandible fractures, a maxillary sinus fracture, nasal fractures, a skull fracture, a lip laceration, bruising, and swelling.  Commonwealth Trial Exhibit C.  The trauma

---

[*] Former Justice specially assigned to the Superior Court.

physician noted that the victim would have "significant long-term disability due to this injury." Commonwealth Trial Exhibit D.

Appellant was arrested on charges of aggravated assault, simple assault, and harassment. He proceeded to a two-day jury trial in August of 2014. Following Appellant's conviction of all three offenses, the trial court sentenced him on November 5, 2014, to incarceration for a term of three-and-one-half to eight years. Defense counsel moved for permission to withdraw, which the trial court granted. New counsel was appointed, and she filed post-sentence motions on Appellant's behalf. Following a hearing on May 27, 2015, the trial court denied Appellant's motions. Order, 7/7/15. This appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following questions for our consideration:

1. Whether the weight of the evidence offered by the Commonwealth is inconsistent with the rendered jury verdict.

2. Whether the trial court erred in admitting the complainant's statement as stated on trial transcript page 1.80 as a present sense impression.

3. Whether the trial court erred in admitting Commonwealth Exhibits B and F as these exhibits were used to unfairly bolster the credibility of the Commonwealth's witnesses.

4. Whether the trial court erred in denying defense counsel's motion for judgment of acquittal when the evidence presented did not meet the Commonwealth's burden of proof.

5. Whether the trial court erred in instructing the jury in "false in one, false in all" without an offer of proof from the Commonwealth.[1]

6. Whether the trial court erred in prohibiting Appellant from making an oral motion for extraordinary relief prior to his sentencing.

7. Whether the trial court erred in forcing Appellant to pick a jury with his trial counsel, despite Appellant's numerous assertions to the court of trial counsel's ineffectiveness.

8. Whether the cumulative effect of the aforementioned errors at Appellant's trial and sentencing deprived Appellant of a fair and impartial trial and his due process of law.

Appellant's Brief at 19–20 (full capitalization omitted).

We first address Appellant's fourth issue regarding the sufficiency of the evidence. *See Commonwealth v. Toritto*, 67 A.3d 29, 33 (Pa. Super. 2013) ("Because a successful sufficiency of the evidence claim warrants discharge on the pertinent crime, we must address this issue first."). After the Commonwealth rested, Appellant moved for a judgment of acquittal on the charge of aggravated assault. N.T., 8/11/14, at 2.188. According to Appellant, the Commonwealth did not prove that Appellant intended to cause serious bodily injury or that the victim suffered serious bodily injury. *Id.*; Appellant's Brief at 38–39. The trial court opined, "I am satisfied that there

_____

[1] Appellant has withdrawn issue number five "in its entirety." Appellant's Brief at 31 n.4.

is sufficient evidence to allow the case to go to the Jury on certainly the simple assault and the aggravated assault." N.T., 8/11/14, at 2.190.[2]

"A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." *Commonwealth v. Emanuel*, 86 A.3d 892, 894 (Pa. Super. 2014) (citation omitted); *Commonwealth v. Devries*, 112 A.3d 663, 667 (Pa. Super. 2015) (quoting *Emanuel*). Our standard of review of a sufficiency challenge is well settled:

> In reviewing a claim regarding the sufficiency of the evidence, an appellate court must determine whether the evidence was sufficient to allow the fact finder to find every element of the crimes charged beyond a reasonable doubt. *Commonwealth v. LaCava*, 542 Pa. 160, 171, 666 A.2d 221, 226 (1995). In doing so, a reviewing court views all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. *Id.* Furthermore, in applying this standard, the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence. *Commonwealth v. Cousar*, 593 Pa. 204, 217, 928 A.2d 1025, 1032 (2007). . . . Additionally, we note that the trier of fact, while passing on the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence. *Id.* at 217, 928 A.2d at 1032–33.

*Commonwealth v. Burton*, 2 A.3d 598, 601 (Pa. Super. 2010) (quoting

*Commonwealth v. Galvin*, 603 Pa. 625, 985 A.2d 783, 789 (2009)).

---

[2] Although Appellant raised this issue in his Pa.R.A.P. 1925(b) statement, the trial court did not address it in its opinion to this Court.

Appellant was convicted under 18 Pa.C.S. § 2702(a)(1), which provides, "A person is guilty of aggravated assault if he ... attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. "When a victim actually sustains serious bodily injury, the Commonwealth can, but does not necessarily have to, establish specific intent to cause such harm." *Burton*, 2 A.3d at 602.

Here, the victim testified at trial that Appellant and his girlfriend, Anchilla, were arguing at the party, which Ms. Heather Blank ("Heather") was hosting in her mobile home. N.T., 8/11/14, at 1.34–1.39. The victim intervened between the couple, advising them to calm down and be quiet because they were guests in the home. *Id.* at 1.38–1.39. The victim then turned away from Appellant to speak with Heather, at which point he heard a thud and turned to see Anchilla on the floor. *Id.* at 1.39. The victim again admonished Appellant: "Knock the fuck off. We are in somebody's house. No one deserves to be beated on like that." *Id.* at 1.40. In response, Appellant asked the victim, "How would [you] like it if . . . you just found out your old lady was F'in some dude about two weeks back?" *Id.* at 1.41. The

victim turned back to Heather and began talking with her. *Id.* at 1.41–1.42. While the victim and Heather were talking, Appellant moved into a corner and took a step away from the victim, stating that the victim and Heather "were both going to get [their] fill." *Id.* at 1.42–1.43. As the victim continued to talk and laugh with Heather, "she starts waving her hands like this and her head goes back and she starts runnin' back the hallway." *Id.* at 1.44. When the victim turned around, Appellant delivered the left-right blows to the victim's head, and the victim fell to the floor. *Id.* Appellant remarked, "It ain't so F'in funny now?" and then walked into the living room. *Id.* at 1.48. The victim was able to leave the mobile home and drive himself to a nearby senior citizen facility where someone called for help; an ambulance transported him to the hospital. *Id.* at 1.44–1.45. The victim denied taking any swings at Appellant or making any aggressive moves toward Appellant. *Id.* at 1.46.

The victim described his injuries as a break on each side of his lower jaw which caused it to flap when he tried to talk; a crushed sinus passage; a fracture to his forehead and his chin. N.T., 8/11/14, at 1.48–1.49. The victim required a tracheotomy during surgery to assist his breathing; his jaw was wired shut; plates and screws were inserted to hold his jaw in place; he was in the hospital for over a week; he ate pureed food through a straw; and he missed work from March 14, 2014 until sometime in July of 2014. *Id.* at 1.49–1.50, 1.52. He testified that future surgeries would be needed

to ameliorate his breathing and his hearing and that he requires speech therapy. *Id.* at 1.51.

Dr. Richard Lammers was the emergency room doctor who first saw Appellant. He testified that Appellant presented with trauma to his face, swelling on the right side of his face, a deformity of his jaw, a nasal fracture, facial fractures, and a skull fracture. N.T., 8/11/14, at 1.100–1.102, 1.104. Dr. Lammers characterized Appellant's injuries as serious and the result of multiple blows to his face. *Id.* at 1.107–1.108.

Dr. Kamran Shayesteh was the reconstructive plastic surgeon who treated Appellant's facial fractures. *Id.* at 1.115–1.116. He testified that Appellant had eleven broken facial bones, including the jaw, the maxilla, both sides of his nose, his cheek, and his front bone sinus. *Id.* at 1.116. He characterized Appellant's injuries as "pretty significant." *Id.* at 1.117. Dr. Shayesteh explained that Appellant underwent a tracheotomy before surgery because the swelling to his face and mouth precluded a traditional intubation. *Id.* at 1.118. He further described wiring Appellant's jaw shut for approximately five weeks, affixing permanent titanium plates to Appellant's jaw, and repairing the nasal, cheek bone, and maxilla fractures manually. *Id.* at 1.119. Dr. Shayesteh indicated that Appellant was required to drink through a straw for several weeks and will require an additional surgery to advance his cheekbones and align his upper and lower

teeth. *Id.* at 1.120. According to Dr. Shayesteh, Appellant's injuries involve significant pain and long-term disability. *Id.* at 1.121–1.122, 1.124.

Viewed in the light most favorable to the Commonwealth as verdict winner, the victim's and doctors' testimonies were sufficient to prove that the victim suffered serious bodily injury as a result of Appellant's assault. *Accord Commonwealth v. Nichols*, 692 A.2d 181 (Pa. Super. 1997) (holding that assault victim's broken jaw and six-week liquid diet constituted serious bodily injury in that he suffered protracted loss and impairment of function). Also, Appellant's punches to the unsuspecting victim's head, coupled with Appellant's demeanor and statements before and after the assault confirm that he intended to cause serious bodily injury to a vital part of the victim's body. *Burton*, 2 A.3d at 603 (affirming that evidence was sufficient to prove serious injury and intent where appellant delivered single punch to defenseless victim causing him to fall back and hit his head on pavement). Thus, we conclude that the evidence was sufficient to sustain Appellant's aggravated assault conviction.

Next, we address Appellant's first issue which challenges the weight of the evidence. Appellant argues that a "dearth of evidence, coupled with significantly inconsistent testimony, cannot lead a jury to conclude beyond a reasonable doubt that Appellant was [guilty] of any or all of the crimes for which he was charged." Appellant's Brief at 31–32. According to Appellant,

because the jury was "left to guess what happened, the verdict must be set aside." *Id.* at 35 (citation omitted).

Our Supreme Court set forth the following standards to be employed in addressing challenges to the weight of the evidence:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Widmer*, 560 Pa. 308, 319, 744 A.2d 745, 751-[7]52 (2000); *Commonwealth v. Brown*, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Widmer*, 560 A.2d at 319-20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id*. at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Brown*, 538 Pa. at 435, 648 A.2d at 1189.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

>> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Brown*, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction

that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Widmer*, 560 Pa. at 321-[3]22, 744 A.2d at 753 (emphasis added).

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–1055 (Pa. 2013). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879-880 (Pa. 2008).

In addressing this issue, the trial court observed as follows:

We first note that "in criminal proceedings, the credibility of witnesses and weight of evidence are determinations that lie solely with the trier of fact, which is free to believe all, part, or none of the evidence." *Commonwealth v. Lewis*, 911 A.2d 558, 566 (Pa. Super. Ct. 2006). Further, we take this opportunity to call attention to certain factual misrepresentations made by [Appellant], e.g., "The complainant testified that he was 'so disoriented' …and that he 'doesn't remember anything.'" In fact, Victim did not testify that he did not remember anything regarding the altercation, but rather that he did not recall anything for five days after the altercation, i.e., from his entry into the ambulance to the point when he woke up in the hospital five days later. Trial Tr. 1.48:9–20. Victim further testified that he was disoriented not during or prior to the altercation, but after he was assaulted. *Id.* at 1.44:15–1.45:2.

Trial Court Opinion, 9/17/15, at 9 (footnote omitted). Although the trial court did not fully analyze Appellant's weight claim upon denying his post-sentence motion or in its opinion to this Court, we note that it had the opportunity to hear and see the evidence presented. *Farquharson*, *Widmer*. Upon review of that evidence, we discern no abuse of discretion in the trial court's implicit conclusion that the verdict was not against the

weight of the evidence. Contrary to Appellant's arguments, the jury was not required to guess what happened as a result of conflicting and inconsistent testimony. Rather, acting within its purview, the jury chose to believe the victim's assault version of events over Appellant's self-defense version. *Lewis*, 911 A.2d at 566. Appellant is not entitled to relief on this issue.

Appellant's second issue challenges the admission of purported hearsay evidence. According to Appellant, Heather testified that "[the victim] was trying to get Appellant to calm down." Appellant's Brief at 35 (citing N.T., 8/11/14, at 1.80). The Commonwealth justifies Heather's testimony by characterizing it as a present sense impression, which is an exception to the hearsay rule under Pa.R.E. 803(1).[3] Commonwealth's Brief at 3. In retort, Appellant argues that because Heather "never actually viewed" the argument, her testimony did not satisfy the requirements of Rule 803(1). Appellant's Brief at 36.

The trial court provided the backdrop for this issue as follows:

[The] Assistant District [Attorney] . . . questioned the trial witness, Heather Blank, about an interaction between the victim . . . (declarant), and [Appellant], which occurred after Ms. Blank and [the victim] had heard [Appellant] arguing with their friend Anchilla Guthrie:

---

[3] Pa.R.E. 803(1) states, "The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: **(1) Present Sense Impression.** A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."

Q.     Okay.  And so you hear what [the victim] had heard with them arguing?

A.     Yes.

**Q.     You had heard arguments between them.  Do you remember what [the victim] said to them?**

**A.     Dave was trying to get him to calm down.**

Q.     Okay.  What were the words that he was using?

A.     I don't remember the exact –

**[Defense Counsel]:  I'm going to object, Your Honor –**

The Court:  Just a moment.

**[Defense Counsel]: -- to hearsay.**

[Assistant District Attorney]: Your Honor, I think it's a present sense impression.  I think she's allowed to testified as to what occurred in her presence that evening.

The Court:  I'll allow it.

[Assistant District Attorney]:  You can go ahead, Heather.  What kind of words was he using?

A.     He just told [Appellant] not to be talking to Anchilla the way that he was.

Q.     How would you describe the tone that was being used?

A.     A nicely manner.

Q.     How many times or how often do you recall [the victim] saying something to [Appellant] and Anchilla about quieting down or calming down?  Approximately – how often was this going on?

A.     I heard it once.

Trial Court Opinion, 9/17/15, at 2–3 (quoting N.T., 8/11/14, at 1.80–1.81; emphases supplied). The trial court's disposition of this issue was three-fold: Heather's testimony was not hearsay because it recounted the victim's directive or instruction to Appellant; it did not qualify as a present sense impression; and allowing the statement was harmless error because the victim himself testified earlier in the trial that he was trying to get Appellant to calm down. Trial Court Opinion, 9/17/15, at 3–8.

Upon review, we agree with the trial court's analysis. Heather's testimony was not hearsay. **See** Pa.R.E. 801 *Comment* ("Communications that are not assertions are not hearsay. These would include questions, greetings, expressions of gratitude, exclamations, offers, instructions, warnings, etc."); **Commonwealth v. Rosario**, 652 A.2d 354 (Pa. Super. 1994) (holding that co-defendant's directive to witnesses "to go into the bedroom for a few minutes immediately before the attack, . . . [was] not hearsay"); **cf. Commonwealth v. Parker** 104 A.3d 17, 21–22 (Pa. Super. 2014) (emphasizing that where the substance of a communication, *e.g.*, a question, contains an implied assertion and is offered for the truth of the matter asserted, it is hearsay and generally inadmissible). As the trial court observed, the victim's "statement to [Appellant] took the form of a directive, similar to the one made in *Rosario*, and, unlike in *Parker*, impliedly asserted no specific fact. . . . Further, it was not offered for the truth of the matter (i.e., to show that [Appellant] was not calm), but rather to show that

- 13 -

[Heather] only witnessed [the victim] make a remark to [Appellant]." Trial Court Opinion, 9/17/15, at 6.

Furthermore, Heather's statement was not a present sense impression under Pa.R.E. 803(1), because she was not the declarant. She recounted the gist of the victim's statements, not her own. *See* N.T., 8/11/14, at 1.80 ("[The victim] was trying to get [Appellant] to calm down.").

Finally, even if the statement did contain hearsay, we agree with the trial court that any error in admitting the statement was harmless:

Per the Pennsylvania Supreme Court,

> The doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that "a defendant is entitled to a fair trial but not a perfect one."

*Commonwealth v. Allhouse*, 36 A.3d 163, 182 (Pa. 2012) [citation omitted].

\* \* \*

> [Heather's] testimony regarding [the victim's] statement to [Appellant], even if it did contain hearsay, was harmless error because it was merely cumulative of testimony given by [the victim] himself earlier in the trial, which had not been objected to at trial, and is not being appealed now.

Trial Court Opinion, 9/17/15, at 6, 8 (citing N.T., 8/11/14, 1.39–1.40).

Thus, we conclude that Appellant's hearsay challenge lacks merit.

- 14 -

Next, Appellant complains that the trial court erred in admitting the written police statements of Heather and her boyfriend, Levi West ("Levi") Commonwealth Exhibits B and F, respectively. According to Appellant, the statements were used "as aids in their testimony," were referred to "not in the sense of refreshing recollection," and "unfairly bolstered" the credibility of the witnesses. Appellant's Brief at 36–37.

The trial court disposed of this issue succinctly:

Even if Levi West's and Heather Blank's testimony had not been impeached to the extent that it was prudent to admit rehabilitating prior consistent statements, we believe it was harmless error to admit them because the police statements were merely cumulative of the witnesses' testimony in court and without any more prejudicial material that was in the witnesses' in-court testimony.

Trial Court Opinion, 9/17/15, at 9.

Upon review, we discern no abuse of the trial court's discretion. However, we affirm its evidentiary ruling on a different basis. *See* *Commonwealth v. Moser*, 999 A.2d 602, 606 n.5 (Pa. Super. 2010) ("[T]his Court may affirm a decision of the trial court if there is any basis on the record to support the trial court's actions, even if we rely on a different basis.").

Initially, we note Appellant's misrepresentations of the record. According to Appellant:

the statements that the witnesses gave to the police were identified and used throughout the course of each witness' testimony during the Commonwealth's case-in-chief. By allowing this [to] occur, the Trial Court sanctioned the

- 15 -

> Commonwealth's unfair bolstering of each witness and did not allow the jury to hear the witnesses' own recollections concerning the night in question. The jury then was permitted to use these witnesses' statements, no matter how unreliable they were and no matter how unreliable their own testimony was, in convicting the Appellant, in stark contrast to the law of Pennsylvania.

Appellant's Brief at 37 (citation omitted).

Our review of the record reveals that Heather testified about the events leading up to and following the assault from memory. At no point during her direct testimony did Heather refer to or rely on Exhibit B. *Id.* at 1.73–1.85. In fact, the prosecutor did not mark Heather's written police statement as Commonwealth Exhibit B until the end of Heather's direct testimony. *Id.* at 1.85. He then asked her to identify Exhibit B, to confirm her signature on it, and to indicate the date on which it was given. *Id.* at 1.85–1.87. On cross-examination, defense counsel did not question Heather about Exhibit B or attempt to impeach her with it. *Id.* at 1.88–1.92. On Heather's redirect, no mention of Exhibit B was made. *Id.* at 1.92–1.93.

Similarly, Levi testified from memory about the events leading up to and following the assault. At no point during his direct testimony did Levi refer to or rely on Exhibit F. N.T., 8/11/14, at 1.130–1.139. At the end of Levi's direct testimony, the prosecutor marked Levi's written police statement as Commonwealth Exhibit F. *Id.* at 1.139. He then asked Levi to identify Exhibit F, to confirm his signature on it, and to indicate the date on which it was given. *Id.* at 1.139–1.140. On cross-examination, defense

counsel did not question Levi about Exhibit F or attempt to impeach him with it. *Id.* at 1.141−1.144.

Having clarified the record, we examine the procedural posture of Appellant's challenge and find waiver. On the first day of trial, the Commonwealth presented the victim with his statement, Exhibit A, for identification. N.T., 8/11/14, at 1.56. When the prosecutor asked the victim to read from the statement, defense counsel objected to Exhibit A as hearsay. *Id.* at 1.58. Concerned that Exhibit A would bolster the victim's testimony, the trial court admitted Exhibit A "for the purpose of making it part of the record," but prohibited its use for questioning the victim. *Id.* at 1.58, 1.71−1.72. On the second day of trial, the prosecutor offered Exhibits B and F for admission into evidence just before the Commonwealth rested. N.T., 8/12/14, at 2.186. Defense counsel objected for the same reason "previously discussed," presumably, hearsay. *Id.* The trial court admitted Exhibits B and F over the defense objection without expressing its reasoning. *Id.* at 2.187.

Although it is unclear on what basis Appellant seeks to overturn the trial court's evidentiary ruling on appeal, we need not reach the merits of this challenge. At trial, Appellant objected to the statements as hearsay. N.T., 8/12/14, at 2.186. A thorough review of the certified record reveals that Appellant failed to properly advance the arguments currently raised on appeal and belied by the record, *i.e.*, that the trial court "allowed the

witnesses' testimony to be unfairly bolstered;" "did not allow the jury to hear the witnesses' own recollections concerning the night in question;" and permitted the witnesses "to utilize their out-of-court statements to assist in their testimony." Appellant's Brief at 37. Appellant's failure to preserve these claims for appellate review results in waiver. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").[4]

In his sixth issue, Appellant complains that the trial court erred in prohibiting him from making an oral motion for extraordinary relief prior to his sentencing. Appellant's Brief at 40. The Commonwealth responds, "A weight of the evidence claim was the argument Appellant sought to have addressed by the court at [sentencing]. There was no indication to the court that he intended to raise the other matters raised in his appeal." Commonwealth's Brief at 7.[5] We agree.

---

[4] Even if not waived, this issue lacks merit. Exhibits B and F were not used substantively to bolster the witnesses' testimony. They were cumulative evidence of the witnesses' testimony. Nothing in the record indicates they were furnished to the jury during deliberations, and, if they were, any inconsistencies between the witnesses' trial testimony and their police statements would be resolved by the jury. *Commonwealth v. Sanchez*, 36 A.3d 24, 27 (Pa. 2011) ("Issues of witness credibility include questions of inconsistent testimony and improper motive.").

[5] Although Appellant raised this issue in his Pa.R.A.P. 1925(b) statement, the trial court did not address it in its opinion to this Court.

Oral motions for extraordinary relief are governed by Pa.R.Crim.P. 704(B), which reads as follows:

**(B) Oral Motion for Extraordinary Relief.**

(1) Under extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial.

(2) The judge shall decide a motion for extraordinary relief before imposing sentence, and shall not delay the sentencing proceeding in order to decide it.

(3) A motion for extraordinary relief shall have no effect on the preservation or waiver of issues for post-sentence consideration or appeal.

Pa.R.Crim.P. 704(B).   The Comment to Rule 704(B) provides, in relevant part, the following instruction:

*Oral Motion for Extraordinary Relief*

Under paragraph (B), when there has been an error in the proceedings that would clearly result in the judge's granting relief post-sentence, the judge should grant a motion for extraordinary relief before sentencing occurs. Although trial errors may be serious and the issues addressing those errors meritorious, **this rule is intended to allow the trial judge the opportunity to address only those errors so manifest that immediate relief is essential**. It would be appropriate for counsel to move for extraordinary relief, for example, when there has been a change in case law, or, in a multiple count case, when the judge would probably grant a motion in arrest of judgment on some of the counts post-sentence. Although these examples are not all-inclusive, they illustrate the basic purpose of the rule: **when there has been an egregious error in the proceedings, the interests of justice are best served by deciding that issue before sentence is imposed.** Because the relief provided by this section is extraordinary, boilerplate motions for extraordinary relief should be summarily denied.

Pa.R.Crim.P. 704(B), cmt. (emphasis supplied).

"Rule 704(B) is intended to allow the trial judge the opportunity to address only those errors so manifest that immediate relief is essential. This Court . . . will not allow such motions as a substitute vehicle for raising a matter that should be raised in a post-sentence motion." ***Commonwealth v. Grohowski***, 980 A.2d 113, 115 (Pa. Super. 2009) (quoting ***Commonwealth v. Askew***, 907 A.2d 624, 627 (Pa. Super. 2006)) (internal quotation marks omitted).

Prior to sentencing, the following exchange occurred between Appellant and the trial court:

THE COURT: Mr. Rigo, go ahead.

[APPELLANT]: Yes, Your Honor, I would like to make an Oral Motion for Extraordinary Relief. I would like you to hear a Motion to Arrest of [sic] Judgment because the conviction for aggravated assault was against the weight of the evidence. The Commonwealth has not proved that I intended --

THE COURT: Excuse me, Mr. Rigo, these are issues that you will raise on appeal in this case. They are not appropriate --

[APPELLANT]: Post-sentence --

THE COURT: -- to be heard at this time.

N.T., 11/5/14, at 6.

Clearly, the basis for Appellant's oral motion for extraordinary relief before sentencing was a challenge to the weight of the evidence supporting the aggravated assault conviction which warranted an arrest of judgment. However, such a claim is the basis for post-sentence relief, not extraordinary

- 20 -

relief. Pa.R.Crim.P. 720(B)(1)(a)(iii); *see also Commonwealth v. Hodge*, 658 A.2d 386, 389. (Pa. Super. 1995) ("Therefore, a defendant, who wishes to seek a new trial on grounds that the verdict was contrary to the weight of the evidence, must necessarily raise this issue via post-sentencing motion in the trial court."). Moreover, the basis for extraordinary relief Appellant raises on appeal is ineffective assistance of counsel ("IAC"). Appellant's Brief at 40–42. This is not a basis for extraordinary relief either. *See Grohowski*, 980 A.2d 113 (holding that claim of ineffectiveness of counsel is not appropriate basis for oral motion for extraordinary relief). Appellant acknowledges that he "had the right to raise many of these issues via post-sentence motions and the instant appeal, both of which he elected to do[.]" Appellant's Brief at 42. Thus, we discern no error in the trial court's denial of Appellant's inappropriate oral motion for extraordinary relief.

Appellant's seventh issue asserts that the trial court abused its discretion "[i]n forcing Appellant to proceed to trial with an alleged[ly] ineffective trial counsel." Appellant's Brief at 43. Appellant lists twenty-seven filings and letters to the trial court which communicated trial counsel's ineffectiveness. *Id.* at 42–43. Additionally, in support of what Appellant considers a possible "issue of first impression," he cites to *Commonwealth v. Faulk*, 921 A.2d 1061 (Pa. Super. 2007). According to Appellant:

> Faulk was forced to proceed to jury selection and later a jury trial with counsel he alleged as ineffective and was later convicted by that jury. Faulk's case was decided on other issues, but it calls into question trial procedures where criminal

- 21 -

defendants are forced to proceed with allegedly ineffective counsel.

Appellant's Brief at 43 (internal citations and italics omitted).

The Commonwealth suggests that Appellant's argument is belied by the record:

> On the business day before a jury was to be selected, Appellant filed a motion for ineffective assistance of counsel. The court brought Appellant before it to determine whether he wished to proceed to trial by picking a jury, or whether he wished to have his motion heard by the court. Due to the timing of Appellant's filing, the court could not timely hear his motion and allow the trial to proceed that term. The court clearly explained this to Appellant, who refused to continue the matter to allow his motion to be heard. In doing so, Appellant chose to proceed to trial with the counsel he had at that time.

Commonwealth's Brief at 7–8.

Upon review of the transcript, we confirm the Commonwealth's position and affirm the trial court's ruling. Appellant was given the choice of having his IAC claim heard, which would require a continuance of the trial, or proceeding to pick a jury with allegedly ineffective counsel. N.T., 8/4/14, at 5–8. Appellant explained his position to the judge and stated repeatedly that he did not want a continuance. *Id.* at 6, 8–9. After Appellant twice deferred to the trial judge's discretion, the trial judge declared, "Then we're going to trial." *Id.* at 7, 9. On this record, Appellant cannot be heard to complain now about proceeding to trial. Therefore, we discern no merit to Appellant's assertion that he was forced to pick a jury with ineffective trial counsel.

Finally, Appellant contends that "the cumulative effect of the aforementioned errors" deprived him of a fair and impartial trial and his due process of law. Appellant's Brief at 45. We disagree for the very reason recognized by Appellant: "Pennsylvania law does not allow for an accumulation of error argument where each of Appellant's individual appellate issues [is] meritless." *Id.* Having found that each of Appellant's issues was meritless or waived, we reject Appellant's cumulative-effect argument. *Accord Commonwealth v. Wilson*, 615 A.2d 716, 723 (Pa. 1995) ("[N]o number of failed claims may collectively attain merit if they could not do so individually. Appellant's reliance upon error arising from the cumulative impact of 'repeated improper remarks' is misplaced.").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/2/2016

- 23 -