J-S55007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| FLOYD CONSTANTIN BOGLE, | : | |
| | : | |
| Appellant | : | No. 495 MDA 2017 |

Appeal from the PCRA Order February 22, 2017
In the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0003127-2008

BEFORE:   DUBOW, J., RANSOM, J., and STRASSBURGER, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED OCTOBER 19, 2017**

Floyd Constantin Bogle ("Appellant") appeals *pro se* from the denial of his Petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.[1]  He asserts that trial, appellate, and post-conviction counsel provided ineffective assistance, and avers that the PCRA court should have held a hearing on his Petition.  We affirm in part and remand to the trial court for the appointment of counsel and an evidentiary hearing on the issue of plea counsel's effectiveness.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The PCRA court rendered its Order on February 21, 2017; however, the Order was not entered on the trial court's docket until February 22, 2017. The caption in this appeal has been changed accordingly.

On January 27, 2011, a jury found Appellant guilty of First-Degree Murder, Aggravated Assault, and Possession of an Instrument of Crime ("PIC") in connection with the fatal stabbing of his father. On March 16, 2011, the court sentenced him to a mandatory term of life in prison for First-Degree Murder with credit for time served, and a concurrent sentence of 4 to 24 months' incarceration for PIC.[2] This Court affirmed the Judgment of Sentence and the Pennsylvania Supreme Court denied allowance of appeal. *See Commonwealth v. Bogle*, 1078 MDA 2011 (Pa. Super. filed July 19, 2012) (unpublished memorandum), *appeal denied*, 63 A.3d 772 (Pa. 2013). On October 7, 2013, the United States Supreme Court denied Appellant's Petition for Writ of *Certiorari*. *Bogle v. Pennsylvania*, 134 S.Ct. 231 (2013).

On June 14, 2014, Appellant filed a 51-page *pro se* PCRA Petition. The court appointed counsel and on February 22, 2016, entered an Order providing counsel with 90 days to file an amended PCRA Petition. On April 29, 2016, counsel filed a Petition for Leave to Withdraw as Counsel, in which he also sought the court's permission for Appellant to represent himself. On May 4, 2016, Appellant filed a *pro se* Motion to Proceed *Pro Se*. The court held a status conference after which it deferred ruling on the Motions after

---

[2] Relevant to this appeal, on the first day of trial, Appellant rejected the Commonwealth's offer of an open *nolo contendere* plea to Third-Degree Murder on which the court informed him he could receive a sentence of 20 to 40 years' incarceration. *See* discussion, *infra*.

- 2 -

counsel and Appellant had apparently worked out their differences and Appellant agreed to proceed with counsel representing him.

On October 6, 2016, the court entered an Order scheduling a PCRA Hearing. However, on October 31, 2016, PCRA counsel filed a **Turner**/**Finley**[3] "no-merit letter" requesting leave to withdraw as counsel. Appellant filed a letter in response, and on December 9, 2016, he filed a *pro se* "First Supplement to PCRA Petition" ("First Supplement"). On December 30, 2016, the PCRA court filed a Notice of Intent to Dismiss pursuant to Pa.R.Crim.P. 907.

On January 17, 2017, the court granted counsel's request to withdraw from representation. On January 26, 2017, Appellant filed a *pro se* response to the Rule 907 Notice. On February 22, 2017, the Court entered the order dismissing Appellant's PCRA Petition. Appellant filed a timely *pro se* Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.[4]

In his Brief, Appellant raises the following issues, *verbatim*:

1. Did the PCRA Court error in denying appellants PCRA, First Supplement to PCRA and the Response to the Judges Rule 907 Notice, that dealt with claims of trial Counsel's

---

[3] **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[4] In lieu of a Rule 1925(a) Opinion, the PCRA Court submitted a "Statement of Reasons" directing our attention to its December 30, 2016 Order and Notice of Intent to Dismiss. **See** Statement of Reasons, dated April 12, 2017.

Ineffectiveness by causing appellant to reject a plea offer which is a violation of the Pennsylvania and United States Constitution (6th Amendment) right to Counsel. A right that is extended to the plea bargaining process?

(i)     Did appellate counsel also provide ineffective assistance of counsel for not making a layered ineffectiveness claim on appellate counsel?

(ii)    Did PCRA Court error for not asking PCRA Counsel to make these claims in an Amended PCRA?

2. Did the PCRA Court error in denying appellant a hearing that his appellant counsel was ineffective for not making a claim on appeal that trial counsel was ineffective for failure to call expert witness, John Hume, M.D. to testify without telling appellant that he had to change their plans of not calling Dr. Hume to testify because that plan will not change the outcome of trial. After an agreement they had, which was that appellants testimony would be by way of the expert, because the prosecutor will eat appellant alive if he should take the stand?

(i)     Did the PCRA court error for not asking PCRA counsel to amend this claim, a clear layered ineffective assistance claim?

(ii)    Did PCRA counsel provide ineffective assistance of counsel when he stated that this claim of failure to call expert witness is without merit?

3.  Did the PCRA court error for not vacating appellants conviction of Murder in the First Degree, because of the not guilty verdict of Murder in the Third Degree that is conflicted with the guilty verdict of Murder in the First Degree, because the fact finders had not proven "Malice" in their "Not Guilty" verdict of Murder in the Third Degree which malice is a prerequiste or required element of First Degree Murder and any other Murder?

(i)     Was trial counsel and appellate counsel ineffective for not making this claim, and was PCRA counsel ineffective for not making a layered ineffectiveness claim?

(ii)    Did PCRA court error in not asking PCRA counsel to amend this claim?

- 4 -

4.  Did PCRA court error for not asking PCRA counsel to amend appellants PCRA in regards to trial and appellate counsels ineffectiveness for failing to object or make a claim of prosecutional misconduct?

    (i)       Did PCRA counsel act ineffective for sending appellant a "No Merit Letter" in failing to make a prosecutional misconduct claim?

    (ii)      Did PCRA counsel provide ineffective assistance for not articulating this claim?

5. Did the PCRA court error in denying appellant a hearing to determine the merits of his PCRA, First Supplement to PCRA and the Response to the Judges Rule 907 Notice to Dismiss, that dealt with material issues of Fact?

6. Did the PCRA court error in not removing appointed counsel when asked to do so by appellant?

Appellant's Brief at 7-8.

We review the denial of a PCRA Petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. ***Commonwealth v. Fears***, 86 A.3d 795, 803 (Pa. 2014). This Court grants great deference to the findings of the PCRA court if they are supported by the record. ***Commonwealth v. Boyd***, 923 A.2d 513, 515 (Pa. Super. 2007). We give no such deference, however, to the court's legal conclusions. ***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012).

The right to an evidentiary hearing on a post-conviction petition is not absolute. ***See Commonwealth v. Jordan***, 772 A.2d 1011, 1014 (Pa. Super. 2001). It is within the PCRA court's discretion to decline to hold a

hearing if the petitioner's claim is patently frivolous and has no support in either the record or other evidence. ***See id***. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing. ***See Commonwealth v. Hardcastle***, 701 A.2d 541, 542-43 (Pa. 1997). In "ineffectiveness claims in particular, if the record reflects that the underlying issue is of no arguable merit or no prejudice resulted, no evidentiary hearing is required." ***Commonwealth v. Baumhammers***, 92 A.3d 708, 726-27 (Pa. 2014) (citation omitted). We review a PCRA court's decision to deny a claim without a hearing for an abuse of discretion.

## INEFFECTIVE ASSISTANCE OF COUNSEL - Issues 1 through 4

Appellant's first four issues challenge the effective assistance of trial, appellate, and PCRA counsel. The law presumes counsel has rendered effective assistance. ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010). The burden of demonstrating ineffectiveness rests on Appellant. ***Id***. To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for

counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." ***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003). Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim. ***Commonwealth v. Jones***, 811 A.2d 994, 1002 (Pa. 2002).

With respect to layered ineffectiveness claims, the Pennsylvania Supreme Court has provided the following guidance:

> [I]n order for a petitioner to properly raise and prevail on a layered ineffectiveness claim, sufficient to warrant relief if meritorious, he must **plead, present,** and **prove** the ineffectiveness of Counsel 2 (appellate counsel), which as we have seen, necessarily reaches back to the actions of Counsel 1 (trial counsel). To preserve (plead and present) a claim that Counsel 2 was ineffective in our hypothetical situation, the petitioner must: (1) **plead,** in his PCRA petition, that Counsel 2 was ineffective for failing to allege that Counsel 1 was ineffective for not [taking the suggested actions], ***see Commonwealth v. Marrero***, 748 A.2d 202, 203, n. 1 (2000); and (2) **present** argument on, *i.e.*, develop, each prong of the *Pierce* test as to Counsel 2's representation, in his briefs or other court memoranda.

***Commonwealth v. McGill***, 832 A.2d 1014, 1022 (Pa. 2003) (emphasis in original).

"Where, however, the petitioner fails to plead, present and prove all three prongs of the ***Pierce*** test regarding the underlying issue of trial counsel's ineffectiveness, … [a] petitioner is unable to establish the requisite arguable merit prong of his layered claim of appellate counsel's ineffectiveness*." **Commonwealth v. Reyes***, 870 A.2d 888, 897 (Pa. 2005) (citation omitted).

We address each of Appellant's underlying claims *seriatum*.

**Guilty Plea**

In his first layered ineffectiveness claim, Appellant claims that he would have accepted the open plea of *nolo contendere* to Third-Degree Murder that had been offered if he had known that the court would sentence him to a term of life without parole after his jury conviction on First-Degree Murder. He notes that the sentence he received was "contrary to the court's statement [made during the plea colloquy] that [A]ppellant would get a maximum of 25 [years to] life if found guilty of murder of the first degree." Appellant's Brief at 16. He avers that trial counsel failed to "object to the plain error of the court," and that counsel further failed to inform him that a conviction of First-Degree Murder would carry a term of life imprisonment without the possibility of parole. *See id*. at 17. Appellant asserts that, pursuant to *Lafler v. Cooper*, 566 U.S. 156 (2012), the "proper remedy is to order the state to reoffer the plea agreement." Appellant's Brief at 17.

In its Order and Notice of Intent to Dismiss, the PCRA court addressed this issue in one sentence, stating that Appellant's "complaint that he was not properly advised of the consequences of rejecting the Commonwealth's plea offer flies in the face of the colloquy that begins on page 6 of the transcript of the January 24, 2011 proceedings." Order and Notice of Intent to Dismiss at 7. We disagree.

The exchange referenced by the PCRA court occurred on the first day of trial before the presentation of evidence after counsel requested the court to colloquy Appellant regarding his decision to reject the plea.

**The Court**: Mr. Bogle, it's my understanding that you have chosen not to enter a plea of any kind and you're going to go to trial; is that correct?

[**Appellant**]: Yes, sir.

**The Court**: I think counsel for each of the parties wants to place on the record what that offer was and the fact that you've rejected it.

[**Defense Counsel**]: Your Honor, as defense understood, the offer was an open *nolo contendere* plea to third degree murder.

[**Prosecutor**]: That's correct, Your Honor.

**The Court**: Do you understand that, Mr. Bogle? Do you understand the no contest plea?

[**Appellant**]: Yes, I do.

**The Court**: Do you understand the difference between third[-]degree murder and first[-]degree murder, second[-]degree murder?

[**Appellant**]: In terms of?

**The Court**: In terms of the elements of the offenses.

[**Appellant**]: Yes, sir.

**The Court**: Do you understand the difference in possible sentencing?

[**Appellant**]: Yes, sir.

**The Court**: For each of those three crimes? Do you understand?

[**Appellant**]:  You mean - - -

**The Court**:  In other words, **first[-]degree murder, it would carry a maximum sentence of 25 years to life.**  Do you understand that?

N.T. Trial at 6-8.

The court and defense counsel then explained that under the terms of the plea deal he was rejecting, the guidelines provided that with his past clean record, he could be sentenced to six years, although there was no guarantee that he would not get 20 to 40 years.  ***See id***. at 8-9.

The Sixth Amendment requires effective assistance at critical stages of a criminal proceeding, including during the plea bargaining process. ***McMann v. Richardson***, 397 U.S. 759, 771 (1970).  An ineffective assistance of counsel claim that arises out of the plea bargaining process is within the scope of Section 9543(a)(2)(ii) of the PCRA.  ***See Commonwealth ex rel. Dadario v. Goldberg***, 773 A.2d 126, 131 (Pa. 2001).

In ***Lafler***, ***supra***, the defendant twice rejected a plea offer based on the advice of counsel; a jury convicted him; and he received a harsher sentence than that offered in the rejected plea bargain.  The U.S. Supreme Court granted *certiorari*, and examined how to apply the prejudice test of

*Strickland v. Washington*, 466 U.S. 668 (1984),[5] where the ineffective assistance results in a rejection of the plea offer and the defendant is convicted at an ensuing trial.[6] Ultimately, the *Lafler* Court concluded that, even though a defendant does not have a right to receive a plea offer, "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 566 U.S. at 168.

> If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.

*Id.*[7] *See also Commonwealth v. Steckley*, 128 A.3d 826 (Pa. Super. 2015) (applying *Lafler*, and holding counsel's failure to inform the defendant

---

[5] Under *Strickland,* a defendant seeking relief based on ineffective assistance of counsel first must show that counsel's performance was deficient, requiring showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed defendant by the Sixth Amendment and, second, defendant must show that the deficient performance prejudiced the defense by showing that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable.

[6] All parties in *Lafler* conceded that plea counsel had provided ineffective assistance of counsel when he advised the defendant to reject the plea on the ground that he could not be convicted at trial.

[7] The U.S. Supreme Court also noted that "[t]he fact that [the defendant] is guilty does not mean he was not entitled by the Sixth Amendment to effective assistance or that he suffered no prejudice from his attorney's deficient performance during plea bargaining." *Lafler*, 566 U.S. at 169.

of the possible mandatory minimum sentence during plea negotiations was ineffective assistance of counsel).

Here, it is clear that the trial court erred in telling Appellant during the plea colloquy that if he were convicted of First-Degree Murder, he would receive a sentence of 25 years to life imprisonment. *See* 18 Pa.C.S. § 1102(a)(1) (mandating a term of life without parole for a First-Degree Murder conviction); *Commonwealth v. Yount*, 615 A.2d 1316 (Pa. Super. 1992) (interpreting Section 1102 as requiring life without the possibility of parole). It is also clear from the trial transcripts that plea counsel did not correct the court's incorrect statement at that time. Appellant's averment— that but for counsel's failure to correct the trial court and failure to inform him of the mandatory sentence of life without parole, he would have accepted the plea offer—raises an issue of merit. This satisfies the first prong of the *Pierce* test.

However, it is not apparent from the record before us that Appellant's plea counsel had not, at some point prior to that first day of trial, informed Appellant that Pennsylvania's sentence for First-Degree Murder is life without the possibility of parole. Likewise, it is not apparent from the record

whether Appellant would have accepted the plea offer had he been properly advised of the consequences of rejecting the plea.[8]

Without such evidence, we are unable to determine whether Appellant has met the second and third prongs of the **Pierce** test, *i.e.*, whether there was a reasonable basis for trial counsel's action or inaction, and whether the outcome of the case would have been different but for those actions. Without that determination, we are unable to conclude that Appellant's layered ineffectiveness claim has merit and warrants an appropriate remedy.

Consequently, because of the grave liberty interest at issue here, we are constrained to remand for the PCRA court to appoint counsel and proceed with an evidentiary hearing on the issue of plea counsel's performance.[9]

---

[8] We are mindful that, after being informed that he "can't come back later and say, I want to take the deal," Appellant had responded, "I would not even take time served. I'm going to trial." N.T. at 10. In light of the colloquy preceding Appellant's statement, we will not infer, without other evidence, that if Appellant had known he would get life without parole, he would have made that same statement.

[9] As our Supreme Court has made clear, we must remand for an evidentiary hearing "in cases where the PCRA court declined to hold a hearing, and where an assessment of witness testimony was essential to a petitioner's ineffectiveness claims[.]" **Commonwealth v. Johnson**, 966 A.2d 523, 540 (Pa. 2009). This is so that the PCRA court can observe the witnesses and make credibility determinations based upon the live testimony of these witnesses. **Id**. at 539 (noting "one of the primary reasons PCRA hearings are held in the first place is so that credibility determinations can be made; otherwise, issues of material fact could be decided on pleadings and affidavits alone.").

Although we are remanding to the PCRA court to hold a hearing, we are nonetheless able to address Appellant's remaining issues as we agree with the PCRA court that they are without merit.

**Failure to Call Psychiatrist/Waiver of Right to Testify**

In his next claim of ineffectiveness, Appellant contends that trial counsel erred by not calling Dr. Hume as a defense witness on his behalf so as to counter the testimony presented by Appellant's cell mate.[10] **See** Appellant's Brief at 26. He states that if Dr. Hume had been called to testify, he could have presented Appellant's version of events to the jury without exposing Appellant to cross-examination. Appellant further avers that if he had known that Dr. Hume was not going to testify, he could have decided to testify on his own behalf.

Appellant contends that he was unaware at the time of his waiver colloquy that defense counsel would not be calling Dr. Hume to testify. This contention is belied by the record. After the Commonwealth rested, and the court denied Appellant's request for a judgment of acquittal, defense counsel stated, "You Honor, defense will not be presenting evidence. Mr. Bogle is electing not to testify." N.T. at 456. Then the court, with the assistance of defense counsel, conducted a waiver colloquy during which Appellant

---

[10] Adam Weiss was Appellant's jail cell mate for approximately one month and testified that Appellant had told him "God does his work through his people, and on the same breath said his father's time was up" and "it was his father's time to go." N.T. Trial at 214, 233.

indicated that he was not coerced or forced into making the decision not to testify and that his decision was made of his own free will. *See id*. at 456-459. Because defense counsel stated **prior to the colloquy** that the defense would not be submitting any evidence, Appellant was well aware that Dr. Hume would not be testifying before he waived his right to testify.

Further, as the PCRA court noted:

[T]he defense [theory] was that there was no evidence to show that [Appellant] committed the crime, not that he committed the crime but had a mental health defense. Additionally, Dr. Hume would not have been able to testify about any of [Appellant's] statements to him for the truth of those statements so as to excuse [Appellant's] own testimony on that basis. Consequently, there was no prejudice to [Appellant] in not having Dr. Hume testify.

Order and Notice of Intent to Dismiss at 6.

We, thus, conclude that there is no merit to Appellant's underlying claim to support his layered assertions of counsel ineffectiveness. No relief is due.

**"Inconsistent" Verdicts**

In his next ineffectiveness claim, Appellant avers that the court violated his right against double jeopardy because it sent the jury back to correct its verdict sheet before the verdict was announced. *See* Appellant's Brief at 20-21. Appellant has mischaracterized the proceedings.

By way of background, during jury deliberations in the instant case, the jury asked the court to remind them of the difference between murder of the first degree and murder of the third degree. *See* N.T. at 552. The court

described the elements of each offense, including the definition of malice as a separate element of both First- and Third-Degree Murder. ***See id***. at 552-55. The jury returned to the jury room, and approximately 20 minutes later, the foreperson handed a verdict sheet to the court. The following exchange then occurred:

> **The Court**: Okay. Obviously, the jury has had a little bit of a problem with my earlier instructions, okay. The instructions regarding the homicide charge are that if you were to find the defendant guilty of any of those charges, you would only write guilty on the charge that you so found. There would be nothing else on the other two offenses.
>
> So, the verdict of the jury as presently constituted, okay, is improper. It is internally conflicted.
>
> **The Foreperson**: Got ya.
>
> **The Court**: So I'd ask you to go back to the jury deliberation room. And if you want me to read anything else about those three charges, I'll do so. But go back to the jury deliberation room and **correct the verdict slip**, okay, if, in fact, that is your verdict. All right.
>
> Do you understand?
>
> **The Foreperson**: Yes.
>
> **The Court**: Okay. Thank you. I'm going to send you out one more time and have you come back.

N.T. at 555-56 (emphasis added).[11]

---

[11] The "invalid verdict slip" was marked for identification as Jury Exhibit No. 5 and is included in the certified record. ***See*** N.T. at 1193.

After sending the jury back, the court held a sidebar to inform counsel that the foreman had written "guilty" on the line following Count 1 – First-Degree Murder, and "not guilty" on the lines following Counts 2 and 3, Third-Degree Murder and Voluntary Manslaughter, respectively. The court then stated:

> Obviously, that cannot be the verdict of the jury unless they come back and tell me that it's not guilty, all right. So I gave them that instruction, sent them out to correct it. Now, we'll see what they come back with. Nobody knows. Conceivably, if they correct it, then they did intend what they wrote on here at least for Count 1. That's what it's going to be. But, inherently, you can't be guilty of first degree and not guilty of third degree. And I think that's due to a misunderstanding. But we'll see what this next one holds. Let's see what they do.

N.T. at 556-57. Appellant's counsel did not object.

The jury returned shortly thereafter, with a verdict sheet finding Appellant guilty of First-Degree Murder, PIC, and two counts of Aggravated Assault, with no other entries on the verdict sheet.

Appellant characterizes the court's action as instructing the jury to "reconsider" its verdict and, as a result, "Appellant[']s double jeopardy rights were violated and he is entitled to the original not guilty verdict rendered by the jury in which the verdict of first degree murder will be invalid, and the finding of guilty and the judgment of sentence be vacated." Appellant's Brief at 24-25. Appellant argues that because the jury in its initial draft of the verdict sheet declared him not guilty of Third-Degree Murder, it meant that the jury did not believe that the Commonwealth had proven malice, and

without proving malice, the guilty verdict for First-Degree Murder on the initial verdict sheet could not stand. Accordingly, he asserts that "[t]rial [c]ounsel was ineffective for not asking for an acquittal based on an invalid verdict," and appellate and PCRA counsel were ineffective for not raising trial counsel's ineffectiveness. *Id*. at 25.

In support of this issue, Appellant relies on *Commonwealth v. Petteway*, 847 A.2d 713 (Pa. Super. 2004). In *Petteway*, the jury announced its verdict, finding the appellant not guilty of possession but guilty of possession with intent to deliver, among other crimes. The appellant's counsel asked to poll the jurors because their verdict was inconsistent. Instead of polling the jurors, however, the court informed the jurors that their verdicts were inconsistent, and then repeated its instructions on constructive possession, and directed the jury to return to deliberate on all charges in order to reach a consistent verdict. The jury returned shortly thereafter with a guilty verdict on possession and reiterated its guilty verdicts on the other charges.

On appeal, this Court concluded that the trial court erred in sending the acquitted charge back to the jury for further deliberation. We recognized that "cases discussing jury mistakes may grant a trial [court] the power to direct amendment of erroneous **guilty** verdicts, none of those cases authorize a court to direct reconsideration of an acquittal." *Petteway*, 847 A.2d at 719 (emphasis in original). Despite the trial court's error in sending

the acquitted charge back to the jury for further deliberation, our Court did not remand for resentencing because the simple possession charge merged with the delivery charge and appellant received no punishment for the former. "Therefore, appellant's sentence would be no different on remand in the absence of that charge." *Id*. at 720.

In *Commonwealth v. Brightwell*, 424 A.2d 1263, 1264 (Pa. 1981), the jury returned two "obviously inconsistent" verdicts of guilty, one for Voluntary Manslaughter and one for Third-Degree Murder. The court ordered that the guilty verdict for Third-Degree Murder be recorded. The appellant raised an ineffectiveness assistance of counsel claim in a PCRA petition, alleging that counsel should have challenged the court's actions. The Pennsylvania Supreme Court held that until a verdict was officially recorded, it was amendable.

The instant case is distinguishable from *Petteway*. Unlike in *Petteway*, the verdict here had not been announced. Further, the court here did not direct the jury to "reconsider" its "not guilty" verdict or its "guilty" verdict. Rather, the court reviewed the verdict sheet, as all trial courts do for accuracy before the foreman announces the verdict, and instructed the jury on how to fill out the verdict sheet properly. Pursuant to *Brightwell*, the court's action was allowable and, contrary to Appellant's argument, did not offend Appellant's double jeopardy rights.

Because the underlying issue in this claim has no merit, Appellant's layered ineffectiveness claims fail.

**Prosecutorial Misconduct**

Appellant next avers that trial counsel and all subsequent counsel were ineffective because trial counsel failed to object when the prosecutor "[m]ade an expression of his personal beliefs when he stated … 'This is a horrible thing, killing your father.'" Appellant's Brief at 31, quoting N.T. at 122.[12] Appellant contends that the prosecutor's comment "prejudice[d] the defendant so much as to prevent appellant from having a fair trial" in violation of his due process rights. Appellant's Brief at 30, citing ***Commonwealth v. Busanet,*** 54 A.3d 35, 64 (Pa. 2013).[13] He further avers that the "prosecutor's expressions of personal belief concerning a critical issue violated the permissible conduct and the standards of the Commonwealth." Appellant's Brief at 31.

_____

[12] Appellant also notes snippets of sentences taken from the Notes of Testimony allegedly representing comments made by the prosecutor during closing arguments, only one of which has a citation to the record. On their face, those partial sentences are simply statements of fact based on the evidence presented. They bear absolutely no semblance to the prosecutor's personal opinion. ***See*** Appellant's Brief at 312, citing N.T.

[13] Appellant cites the case as ***Commonwealth v. Bushner***. ***See Commonwealth v. Busanet***, 54 A.3d 35, 64 (Pa. 2012) (observing that "reversible error arises from a prosecutor's comments only where their unavoidable effect is to prejudice the jurors, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict.").

When considering an allegation of prosecutorial misconduct, the question is "whether the defendant was deprived of a fair trial, not deprived of a perfect trial." *Commonwealth v. LaCava*, 666 A.2d 221, 231 (Pa. 1995). We review claims of prosecutorial misconduct with the following precepts in mind.

> The Pennsylvania Supreme Court has stated that "[t]he essence of a finding of prosecutorial misconduct is that the prosecutor, a person who holds a unique position of trust in our society, has abused that trust in order to prejudice and deliberately mislead [the factfinder]." *Commonwealth v. Pierce*, 645 A.2d 189, 197 (Pa. 1994). … Prosecutorial misconduct will justify a new trial where the unavoidable effect of the conduct or language was to prejudice the factfinder to the extent that the factfinder was rendered incapable of fairly weighing the evidence and entering an objective verdict. If the prosecutorial misconduct contributed to the verdict, it will be deemed prejudicial and a new trial will be required.

*Commonwealth v. Francis*, 665 A.2d 821, 824 (Pa. Super. 1995).

"We will only reverse the trial court if the unavoidable effect of the prosecutor's comments is to create hostility against the defendant such that the jury is hindered in its job of objectively weighing the evidence." *Commonwealth v. Miles*, 681 A.2d 1295, 1302 (Pa. 1996).

As the Supreme Court has noted, "this is a relatively stringent standard against which appellant must labor." *LaCava*, *supra*, at 231 (citation omitted). Moreover, "[t]he touchstone is the fairness of the trial, not the culpability of the prosecutor." *Commonwealth v. Cox*, 983 A.2d 666, 685 (Pa. 2009). Finally, "we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made."

*Commonwealth v. Rolan*, 964 A.2d 398, 410 (Pa. Super. 2008). "The prosecution, like the defense, is accorded reasonable latitude and may employ oratorical flair in arguing its version of the case to the jury." *Commonwealth v. Weiss*, 776 A.2d 958, 969 (Pa. 2001).

In his opening statement, after describing the evidence to be presented, the prosecutor stated:

> Ladies and gentlemen, as I already pointed out to you, this case is going to show you that life is not like CSI. There aren't fingerprints. There is no DNA, and there aren't security tapes everywhere. You're going to get a little flavor of it from the cell phone records. But then again, in the end, they don't do much but show you where Floyd Bogle was. And then he admits to the police, Yeah, I was in Berks County.
>
> Those cell phone records or any one piece in this case doesn't prove anything taken by itself. This case is like a jigsaw puzzle. You're going to put the pieces together. And by the end, the pieces are going to form a picture. And you're going to see what it is, that Floyd Bogle killed his father on April 24th of 2007.
>
> This is a horrible thing, killing your father. But you're going to hear he had the motive about money. He had access. He had his pass and his parking pass to get into [the site]. He had the knowledge because he would drive his father there. And he had the consciousness of guilty.
>
> He lied to his girlfriend. He lied to the police about where he was when they confronted him about the [cell phone] records. He lied about who he was with and what he was doing. He lied to Shaquila Byrd and tried to get her to be an alibi. That's what you're going to hear. And by the end, the puzzle is going to show that the defendant is guilty. Thank you.

N.T. at 122-23.

The only segment of the opening remarks with which Appellant takes umbrage is the prosecutor's stating, "This is a horrible thing, killing your

father." In the context of the entire opening statement, this sentence does not support Appellant's assertion that the prosecutor's conduct prejudiced the jury so as to form in their minds a fixed bias and hostility toward him. It was simply "oratorical flair" which is entirely permissible. Surrounded by the prosecutor's comments about motive and circumstantial evidence, the prosecutor's words seemed designed to acknowledge how difficult it might be for some members of the jury to overcome their belief that the allegations are simply too horrible to be true.

Moreover, although Appellant does not acknowledge it, in both its opening and closing instructions the trial court stated to the jury that statements of counsel are not evidence to be considered in determining its verdict. ***See***, ***e.g.***, N.T. at 98, 100, 461, 524-25. We presume juries follow instructions. ***Commonwealth v. Baker***, 614 A.2d 663, 672 (Pa. 1992). Accordingly, we conclude that Appellant's underlying claim of prosecutorial misconduct has no merit.

Because none of the underlying claims has merit, Appellant's layered ineffectiveness claims fail.

## DISMISSAL OF PCRA PETITION WITHOUT A HEARING – Issue 5

In his fifth issue, Appellant avers that the PCRA court should have held a hearing because, *inter alia*, all the foregoing claims "dealt with material issues of fact." Appellant's Brief at 32. In support, Appellant summarizes each of the issues addressed **supra** before concluding that the PCRA Court's

"failure to prepare an Opinion on all the issues in appellant's Rule 1925(b) statement is an abuse of discretion since the failure to explain the reasons for the order could result in the appellate court being unable to review and determine … that appellant is guilty of all charges." *Id*. at 33-34.

As discussed *supra*, we agree that the PCRA court erred in failing to hold a hearing on the issue pertaining to plea counsel's effectiveness only. However, because the remaining issues are without merit, we conclude that the PCRA court not abuse its discretion in declining to hold a hearing on those issues.

Further, Appellant cites no relevant case law to support his bald allegation that the trial court abused its discretion by failing to "prepare an opinion on all the issues in appellant's Rule 1925(b) statement." Appellant's Brief at 33. Although not titled a Rule 1925(a) Opinion, the PCRA court did submit a "Statement of Reasons" noting that Appellant appealed from its Order and directing our attention to its Rule 907 Order and Opinion. The court's filing of this Statement does not support Appellant's concern that this Court "could be[] unable to review" Appellant's issues.[14] *Id*. at 33. We

_____

[14] Further, we note that contrary to Appellant's belief, it is not within this Court's authority at this juncture to "make a determination that appellant is guilty of all charges." Appellant's Brief at 34. The jury has already done that and this Court affirmed its determination on Appellant's direct appeal. *See Commonwealth v. Bogle*, No. 1078 MDA 2011 (Pa. Super. filed July 19, 2012).

- 24 -

were, in fact, able to conduct a complete review of the record pertaining to each of the issues Appellant addressed in his Brief.

**FAILURE TO REMOVE COUNSEL – Issue 6**

With respect to Appellant's sixth and final issue, he has failed to provide any discussion of the issue with reference to the record, relevant case law, or analysis in his Brief beyond mentioning the issue in his summary section. Accordingly, the issue is waived for lack of development. Moreover, to the extent we are able, we ascertain that the gist of the issue is that PCRA counsel provided ineffective assistance of counsel. We have addressed this issue, *supra*.

Order vacated; case remanded for the appointment of counsel and an evidentiary hearing on the issue of plea counsel's effectiveness. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/19/2017